# EXHIBIT 41
# Arbitration Statement
# (10-20-25)

Sebastian Rucci (SBN 178114)
LAW OFFICES OF SEBASTIAN RUCCI, P.C.
16400 Pacific Coast Highway, Suite 212
Huntington Beach, CA 92649
Tel:  (562) 901-0199
Cell:  (330) 720-0398
Fax:  (562) 249-6910
Sebastian@RucciLaw.com
Attorney for claimant IVCM

# AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| Imperial Valley Computer Manufacturing, LLC | ) |
| Claimant, | ) Case No. |
| vs. | ) |
| | ) **CLAIMANT'S ARBITRATION** |
| | ) **STATEMENT** |
| IMPERIAL IRRIGATION DISTRICT | ) |
| (General Manager, Jamie Asbury) | ) |
| Respondent. | ) |

**IMPERIAL VALLEY COMPUTER MANUFACTURING LLC
ARBITRATION STATEMENT AGAINST
IMPERIAL IRRIGATION DISTRICT (General Manager, Jamie Asbury)**

This arbitration is initiated under IID's Open Access Transmission Tariff § 12.2: "External Arbitration Procedures: Any arbitration initiated under the Tariff shall be conducted before a single neutral arbitrator" who "shall conduct the arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association."

COMES NOW Imperial Valley Computer Manufacturing, LLC ("IVCM"), for its statement of claims against the Imperial Irrigation District ("IID"), states as follows:

# 1 - Introduction to Imperial Valley 330 MW Data Center

1.1     IID OVERVIEW: IID is a public power utility governed by a five-member Board of Directors and headquartered in Imperial County, California. IID is the third largest public power utility in California. IID operates the electric transmission system within its balancing authority area. IID's system includes interstate transmission lines that operate within and beyond its balancing authority area.

1.2     NATURE OF THE DISPUTE: This arbitration arises from IID's violations of IVCM's rights under IID's governing rules and regulations. Specifically, IVCM alleges that IID, through the actions and decisions of its General Manager, Jamie Asbury, has unlawfully interfered with IVCM's access to electric power transmission and operations services necessary for the development of IVCM's 330 MW AI Data Center in Imperial County, California. IID's conduct has directly and materially harmed IVCM's business operations and the broader economic development interests of Imperial County. IID's refusal to provide or facilitate services for the 330 MW AI Data Center undermines regional economic development, violates IVCM's rights under IID's regulatory framework, and constitutes arbitrary and discriminatory conduct inconsistent with IID's obligations as a public utility.

1.3     THE 330MW AI DATA CENTER PROJECT: The 330 MW AI Data Center proposed by IVCM represents a transformative infrastructure project with long-term benefits to Imperial County and the State of California. The project entails a capital investment approaching $10 billion, and is designed to establish Imperial County as a premier hub for artificial intelligence computing, digital infrastructure, and renewable energy integration. The Data Center is projected to generate millions in recurring tax revenues, create over 1,500 construction jobs providing significant employment opportunities in the trades and supporting local economic recovery. Upon completion, the project will have 100 permanent employees across operations, technology, and maintenance functions, while indirectly supporting additional employment in logistics, hospitality, security, and technology services.

1.4     FISCAL IMPACT AND TAX REVENUE: The 330 MW AI Data Center will provide a one-time sales tax benefit of $72.5 million, which will directly support county services and infrastructure. Annual real property taxes of $18.75 million, with an additional $10 million

in personal property taxes each year. These revenues will materially enhance funding for law enforcement, municipal services, education, and other essential public programs. Through the purchase of 330 MW of electric power from IID, the project will provide over $22 million in net annual revenue to IID. These funds will directly benefit IID's ratepayers and contribute to grid modernization, transmission reliability, and community reinvestment.

1.5    SIGNIFICANCE FOR IID AND IMPERIAL COUNTY: The 330 MW Data Center will be the largest data center by power capacity in California, positioning Imperial County as a key hub for AI, and related technology. The Data Center will catalyze investment in clean energy, advanced computing, and attract technology firms seeking low-latency connectivity, renewable power access, and data infrastructure clustering, thereby diversifying the region's tax base and fostering an ecosystem of innovation, education, and workforce development.

1.6    JAMIE ASBURY'S ACTIONS IMPACT ON IMPERIAL COUNTY: Imperial County has a population of approximately 179,091 residents, of which 82 percent identify as Hispanic and 23.3 percent live below the poverty level. Given the region's elevated unemployment and poverty rates, IID's General Manager, Jamie Asbury's obstruction of a $10 billion economic development project constitutes a substantial deprivation of opportunity and public benefit, particularly where such actions contravene IID's established rules and procedures.

## 2 - POWER ENGINEERS INJECTION STUDY FOR DATA CENTER #1

2.1    LAND ACQUISITION: In early October 2024, IVCM secured control of approximately a dozen contiguous parcels of industrially zoned land in Imperial County, California. The parcels are situated adjacent to the IID's 230 kV S-line and 92 kV R-line, making them uniquely suitable for large-scale data-center development. The contiguous acreage allows for the construction of three individual, yet integrated, data centers comprising a unified campus.

2.2    CONSULTANTS HIRED: Following the acquisition, IVCM retained professional consultants -- including electrical, civil, and environmental engineers -- to initiate the processes for land-use approval, reclaimed-water service, backup generation permitting, fiber-optic connectivity, and electrical-supply interconnection with IID.

2.3     INITIAL CONTACT WITH IID: On October 15, 2024, IVCM held its first meeting with IID to discuss the proposed AI Data Center Campus project. During this meeting, IID advised that applications for new loads exceeding 34.5 kV must be submitted with its 16-page form titled "Customer Project Application for Services of 34.5 kV and Above."

2.4     FOLLOW-UP MEETING WITH IID: On October 28, 2024, IID's transmission planning engineers met with IVCM to discuss the technical parameters of the proposed data-centers. Later that same day, IID emailed IVCM a Transmission Customer Service Proposal, attaching the 16-page "Customer Project Application for Services of 34.5 kV and Above." (See IID's published form: https://www.iid.com/power/new-construction)

2.5     ENGAGEMENT OF POWER ENGINEERS: IVCM engaged Power Engineers, a nationally recognized transmission-planning and electrical-engineering firm, to assist with the electrical issues of the data-center project. Power Engineers recommended initiating a load-injection analysis to determine the available capacity of the 230 kV line under varying load conditions.

2.6     POWER ENGINEERS LOAD INJECTION STUDY: On November 15, 2024, IVCM authorized Power Engineers to feasibility study of the 230 kV S-Line. The scope of work included analyzing IID's transmission system's capacity to accommodate incremental data-center loads and to identify any operational or reliability constraints within IID's bulk electric system.

2.7     LOAD-INJECTION STUDY FINDINGS: On December 4, 2024, Power Engineers transmitted to IVCM a memorandum entitled "Load Injection Analysis--IID 230 kV S-Line and 92 kV R-Line" (attached hereto as **EXHIBIT 1**). The memorandum concluded:
- Summer load capacity (230 kV S-Line): 557.8 MW
- Winter load capacity (230 kV S-Line): 823.1 MW
- Summer load capacity (92 kV R-Line): 108.3 MW
- Winter load capacity (92 kV R-Line): 99.8 MW

These findings demonstrated that IID's existing transmission infrastructure possessed ample thermal and contingency capacity to accommodate the proposed IVCM Data Center load.

| Load Capacity of IVCM Sites - 2027 | | | | |
|---|---|---|---|---|
| Site | Summer N-1 capacity [MW] | Summer N-1-1 capacity [MW] | Winter N-1 capacity [MW] | Winter N-1-1 capacity [MW] |
| 230 kV S-Line Tap | 557.8 | 342.0 | 823.1 | 528.9 |
| Central 92 kV Sub | 108.3 | 83.5 | 99.8 | 60.2 |

### 3 - IID FEASIBILITY STUDY FOR 250 MW DATA CENTER #1

3.1   FEASIBILITY STUDY APPLICATION: On December 13, 2024, IVCM emailed IID the Power Engineers Load Injection Memorandum. On January 17, 2025, IVCM submitted an application to IID for a data center campus consisting of 250 MW, 150 MW, and 100 MW facilities on three contiguous lots. The submission included the following materials:

- Power Engineers Load Injection Memo
- IID Project Application for a system impact study on the 230 kV S-line
- One-Line Diagram, EPC Project Model, and DYD Composite Load Model
- Project site plan, site location, and site control documentation

3.2   MEETING WITH IID. On January 28, 2025, IID's Transmission Planning, Resource Planning, Customer Operations, and Environmental Compliance departments met with IVCM to discuss the data center project. During the meeting, IID suggested conducting a sensitivity analysis (feasibility study) to evaluate the project's viability by considering various load scenarios on the 230 kV S-line to determine the maximum load that could be supported without requiring transmission system upgrades.

3.3   SENSITIVITY ANALYSIS APPLICATION: On February 10, 2025, IID emailed IVCM a Sensitivity Analysis application, requesting IID to study 500, 250, 200, and 150 MW load scenarios on the 230 kV S-line. (attached as **EXHIBIT 2**). IID emailed a sensitivity study agreement to perform the study. IVCM asked for clarification on the references to the Generator Interconnection Process (GIP). On February 11, 2025, Lauren Olivo, replied that IID would remove all GIP references, clarified that the project does not fall under the GIP.

> We will work on the Agreement and remove references of the GIP as this project does not fall under the OATT.

3.4    SENSITIVITY STUDY AGREEMENT BY IID: On March 3, 2025, IID sent IVCM a Feasibility Study Agreement for the sensitivity analysis. IVCM executed the agreement. On March 11, 2025, IID emailed a fully executed Feasibility Study Agreement (**EXHIBIT 3**).

3.5    PAYMENT FOR STUDY: On March 4, 2025, IID provided a cost letter estimating $50,000 for the feasibility study. IVCM approved the amount and requested wire instructions. IID responded with an invoice and wiring details. On March 5, 2025, IVCM emailed proof of a $50,000 wire transfer to IID's Chase Bank account.

3.6    IID FEASIBILITY STUDY RESULTS: On May 22, 2025, IID issued its Feasibility Study Report evaluating the 500, 250, 200, and 150 MW load cases on the 230 kV S-line (attached as **EXHIBIT 4**). The report provided detailed results for all requested load conditions and multiple generation/loading configurations. Key findings included:
- No thermal violations for the 150, 200, and 250 MW load scenarios.
- No voltage exceedances or deviations observed at any buses under those scenarios.

> **250 MW load**
> - Results showed there were no thermal violations in IID's transmission system under P0-P7 contingencies. Project did not cause any buses to experience voltage exceedances or deviations.

### 4 - IID SYSTEM IMPACT STUDY FOR 250 MW DATA CENTER #1

4.1    MEETING TO DISCUSS FEASIBILITY STUDY RESULTS: On May 29, 2025, IID Transmission Planning Engineers met with IVCM to review the findings of the previously completed Feasibility Study Report. Following the discussion, IVCM confirmed its intent to proceed with a System Impact Study (SIS) for a 250 MW data center interconnecting to the 230 kV S-line at Aten Road (referred to as Data Center #1).

4.2    SYSTEM IMPACT STUDY AGREEMENT EXECUTION: On June 3, 2025, IID provided IVCM with a System Impact Study Agreement for the proposed 250 MW data center at the 230 kV S-line interconnection point. An executed copy of the agreement was emailed back to IID the same day. Subsequently, on June 12, 2025, IID transmitted to IVCM an executed System Impact Study Agreement for Data Center #1 (attached as **EXHIBIT 5**).

4.3   IID SYSTEM IMPACT STUDY REPORT BY IID: On July 25, 2025, IID issued its System Impact Study Report for Data Center #1 (attached as **EXHIBIT 6**). The study evaluated the 250 MW interconnection under a range of system conditions and contingencies. The results demonstrated the following:
- No thermal violations were identified within IID's transmission system.
- Project did not cause any voltage exceedances or deviations at any monitored buses.
- No transient stability violations were observed under any simulated contingencies.
- The study concluded: "Study results show that this project can be deemed feasible."

> 250 MW load
> - Results showed there were no thermal violations in IID's transmission system under P0-P7 contingencies. Project did not cause any buses to experience voltage exceedances or deviations.
> - Results showed there were no transient stability violations in IID's transmission system under any of the simulated contingencies.
>
> Study results show that this project can be deemed feasible. Please note that IID currently does not have

### 5 - SYSTEM IMPACT STUDY FOR 80 MW DATA CENTER #2

5.1   SUBMISSION OF SYSTEM IMPACT STUDY APPLICATION: On March 5, 2025, IVCM submitted a completed System Impact Study (SIS) application for an 80 MW data center located on Aten Road in Imperial County. The submission package included:
- Power Engineers Load Injection Memo
- 80 MW Data Center Application for the 92 kV R-line (attached as **EXHIBIT 7**)
- One-Line Diagram, EPC project model, and DYD composite load model
- Project site plan, site location, and site control documentation

5.2   AGREEMENT TO PROCEED AND STUDY COST: On April 10, 2025, IVCM and IID agreed to proceed directly with an 80 MW System Impact Study on the 92 kV R-line, without conducting a preliminary sensitivity analysis. IID issued a cost letter estimating $50,000 for the study, which IVCM approved. Subsequently: On May 8, 2025, IID emailed an invoice for $50,000 for the study. On May 9, 2025, IVCM emailed proof that the $50,000 wire transfer had been successfully sent to IID's Chase Bank account.

5.3   EXECUTION OF SYSTEM IMPACT STUDY AGREEMENT: On April 3, 2025, IID emailed IVCM a System Impact Study Agreement for the 80 MW data center. An executed copy was promptly returned by IVCM, and on April 15, 2025, IVCM emailed IID a fully executed System Impact Study Agreement for Data Center #2 (attached as **EXHIBIT 8**).

5.4     IID S<small>YSTEM</small> I<small>MPACT</small> S<small>TUDY</small> R<small>ESULTS</small>: On September 23, 2025, IID issued its System Impact Study Report for Data Center #2, evaluating the 80 MW load interconnection on the 92 kV R-line (attached as **EXHIBIT 9**). The study concluded that: "The Project can be deemed feasible with some transmission infrastructure upgrades. The following upgrades must be installed in the new IVCM substation: one static var device rated 75 MVAR, configured in three switching blocks of 25 MVAR each, for reactive power support and voltage stability." The reactive power equipment is to be done at the new IVCM substation.

## 6 - IID F<small>ACILITY STUDY FOR</small> 250 MW D<small>ATA</small> C<small>ENTER</small> #1

6.1     I<small>NITIATION OF</small> F<small>ACILITY</small> S<small>TUDY</small>: On July 31, 2025, representatives from IID Transmission Planning and Resource Planning met with IVCM to discuss the status of the pending data center applications. Later that day, IID confirmed via email that:

> "The system impact study was approved and IID will proceed to perform the facility study for the 250 MW Imperial Data Center Campus #1. We estimate a **time frame of 6 weeks to complete the study**."

This communication formally initiated the Facility Study phase for Data Center #1, following the completion and approval of the System Impact Study.

> Per our meeting today, the system impact study (SIS) was approved and IID will proceed to perform the facility study for the 250 MW Imperial Data Center Campus #1. We estimate a timeframe of 6 weeks to complete the study but it depends on the work load of our engineers. I will let you know about the agreement by next week, I need to confirm how much funds are remaining from the SIS and I need to discuss internally if those are enough to complete the facility study.

6.2     B<small>OTH</small> L<small>OADS</small>, 250 MW <small>AND</small> 80 MW <small>ON</small> S<small>AME</small> P<small>ARCEL</small>: On August 1, 2025, IVCM emailed IID, that it wanted to proceed with both loads, 250MW and 80 MW, entirely at the Clark and Aten Road location in the County of Imperial. The email attached the latest development plans, which included the data center, substation, BESS, and backup generators.

6.3     A<small>PPLICATION OF</small> R<small>EMAINING</small> S<small>TUDY</small> F<small>UNDS</small>: On August 8, 2025, IID informed IVCM that approximately $38,876 remained unspent from the System Impact Study budget. IID engineering staff estimated that this remaining amount would be sufficient to cover the Facility Study effort, eliminating the need for an additional payment at that time.

6.4    POSTPONEMENT OF FACILITY STUDY: On August 22, 2025, IID sent an email to IVCM stating that: "**IID management [Jamie Asbury] has requested to cancel the meeting today** due to the need to have some internal conversations before being ready to talk about power supply. I will reschedule the meeting as soon as I get a green light." This delayed discussions regarding power supply arrangements and interconnection logistics.

> IID management has requested to cancel the meeting today due to the need to have some internal conversations before being ready to talk about power supply. I will reschedule the meeting as soon as I get a green light. I apologize for the late notice. I have talked to Sebastian about it on the phone.

6.5    EXECUTION OF FACILITY STUDY AGREEMENT: On September 2, 2025, IID emailed IVCM a Facility Study Agreement for the 250 MW Data Center #1 interconnection at the 230 kV S-line. IVCM executed the agreement and returned a signed copy to IID on September 3, 2025. On September 16, 2025, IVCM received a fully executed Facility Study Agreement for Data Center #1 (attached as **EXHIBIT 10**).

### 7 - IID'S GENERAL MANAGER'S ILLEGAL DELAY OF FACILITY STUDY

7.1    SUSPICIOUS CANCELLATION OF MEETING: On August 22, 2025, while traveling to a meeting with IID resource planning, IVCM was informed that the meeting was canceled by upper management. This was the first time IVCM was made aware that IID's general manager, Jamie Asbury, was targeting the data center for delay. By that time, IVCM completed all required technical studies with each one demonstrating technical feasibility.

7.2    FURTHER DELAY AND CONFLICT OF INTEREST: On September 4, 2025, IVCM was informed in a meeting by IID staff that its facility study project was being delayed because upper management, Jamie Asbury, instructed the engineering staff to prioritize six projects from Z-Global and to put everything else aside. On Sept 8, 2025, IID emailed IVCM that IID "cannot start work on the subject facility study until probably November 2025."

7.3    On July 31, 2025, IID confirmed via email that: "The system impact study was approved and IID will proceed to perform the facility study for the 250 MW Imperial Data Center Campus #1. We estimate a time frame of six weeks to complete the study." **The facility study was due September 15, 2026**.

> Per our meeting today, the system impact study (SIS) was approved and IID will proceed to perform the facility study for the 250 MW Imperial Data Center Campus #1. We estimate a timeframe of 6 weeks to complete the study but it depends on the work load of our engineers. I will let you know about the agreement by next week, I need to confirm how much funds are remaining from the SIS and I need to discuss internally if those are enough to complete the facility study.

7.4     OATT §19.4 requires that, upon completion of the System Impact Study, a Facility Study Agreement must be issued within 30 days and completed within 60 days. See OATT § 19.4 ("Upon receipt of an executed Facilities Study Agreement, the Transmission Provider will use due diligence to complete the required Facilities Study within a sixty (60) day period."). The Facility Study Agreement was due on September 15, 2026.

7.5     PREFERENTIAL TREATMENT OF Z-GLOBAL PROJECTS: The facility study was delayed because six projects from Z-Global were moved ahead by General Manager Asbury. Upon information and belief, it is alleged that Jesse Montano, a former IID manager, and now the head at Z-Global in Imperial, met Jamie Asbury on September 4, 2025 and asked her to priority Z-Global's projects. Jamie Asbury was fully aware this violated IID rules and regulations, the OATT and that this would delay the data center project and illegally provided preferential treatment to Z-Global's projects.

7.6     COMMUNICATION WITH IID'S BOARD: Concluding that IID General Manager Jamie Asbury was acting to derail the data center project to benefit Z-Global. On September 8, 2025, IVCM sent emails to IID Board Members Eugenio, Cardenas, and Dockstader, expressing concerns about the recent project delays and actions of General Manager Asbury and requested a meeting. On September 11, 2025, IVCM emailed Jamie Asbury seeking: "An opportunity to meet and discuss" the data center project.

7.7     DISCRIMINATORY PREPAYMENT BY JAMIE ASBURY: On September 16, 2025, General Manager Jamie Asbury met with IVCM and raised several objections to the data center. First, she stated that IID could not provide the 330 MW load without a prepayment of 15 years of electric fees. This amounted to $4 billion in prepayment. She stated that the 330 MW load presented risk to IID. The request for prepayment of $4 billion violates IID's rules and regulations. The OATT provides in § 11 as follows: "Creditworthiness: For the purpose of determining the ability of the Transmission Customer to meet its obligations related to service hereunder, the Transmission Provider [IID] may require reasonable credit review procedures. This review shall be made in accordance with standard commercial practices." The demand to prepay 15 years of services is in direct violation of the OATT, it is not reasonable, and not in accordance with standard commercial practices. The demand to prepay 15 years of service is patently discriminatory as it has never been applied to anyone.

7.8     IVCM WHOLESALE SUPPLY PROPOSAL: Following the meeting, IVCM met with consultants to discuss proposals to mitigate the risk which IID General Manager Jamie Asbury stated. On October 2, 2025, IVCM emailed General Manager Asbury a proposal to temporarily supply energy on a short-term basis through CAISO Day-Ahead and/or Real-Time markets (attached as **EXHIBIT 11**). The proposal removed any risk to IID, by offering a cost-plus revenue structure compensating IID for: Scheduling coordinator services; OATT transmission rate; and Administrative markup. IVCM estimated the arrangement would generate over $22 million per year in positive revenue for IID.

7.9     IID REJECTION AND MISREPRESENTATION ALLEGATION: On October 14, 2025, IID General Manager Jamie Asbury informed IVCM in an email that she had rejected the wholesale supply proposal (attached as **EXHIBIT 12**). The email also alleged that IVCM's interconnection application contained a misrepresentation: "Upon review of your interconnection application, we noted the omission of critical generator data." She stated that IVCM would have to restart the entire application process. It was clear that Jamie Asbury was trying to delay and obstruct the data center.

7.10    IVCM RESPONSE PROJECT IS RECONFIGURED IMPROPERLY: Also, on October 14, 2025, IVCM responded to IID General Manager Jamie Asbury disputing the allegation of misrepresentation, stating that she was mischaracterizing the project and objecting to IID's refusal to advance the project, and refusal to supply power, or consider the wholesale supply proposal (attached as **EXHIBIT 13**). IVCM asserted that the project had been pending before IID for over a year, that backup generators were not and had never been tied to the grid, and that this configuration was accurately disclosed in all submitted materials. IVCM reiterated that IID's position unfairly obstructed its ability to secure power and violated the OATT.

7.11    IID EMAIL RESTATING ILLEGAL RECONFIGURATION OF PROJECT: On October 17, 2025, IID General Manager Jamie Asbury emailed IVCM restating her reconfiguration of the data center submittals and restating that "IID analyzes all generators, even behind the meter resources, to ensure our base cases are accurate and have all scenarios identified and mitigated. There is no way to avoid the study process outlined in the tariff." (**EXHIBIT 13**).

7.12 IVCM Reply to Misstatements: IVCM responded on October 17, 2025, clarifying the procedural record of IVCM's data center project, to correct several factual and procedural misstatements recently raised in the email, and to request IID's prompt completion of its contractual obligations under the OATT (attached without exhibits as **EXHIBIT 15**). The email confirmed that the data center project has no transmission component and that her late-stage misrepresentation are unsupported deviation from over a year of technical and procedural consensus by IID's staff.

## 8 - Facility Study Delay and Disparate Treatment

8.1 Facility Study Procedures: Pursuant to OATT § 19.4 "If a System Impact Study indicates that additions or upgrades to the Transmission System are needed to supply the Eligible Customer's service request" the project will proceed to a System Impact Study. All IID studies confirmed feasibility, with no thermal, voltage, or stability violations (see **EXHIBITS 1, 3, 6, 9**). Hence, it is questionable if a facility study is actually required. If it is required, the data center project completed all required technical studies with each study demonstrating technical feasibility with no system violations, hence, the facility study should be easy to complete. Pursuant to the OATT upon receipt of an executed Facilities Study Agreement, IID will complete the Facilities Study within 60 days.

8.2 Unequal Treatment among Applicants by General Manager Asbury: On July 31, 2025, IID stated via email that the facility study would proceed and that IID estimated "a time frame of six weeks to complete" or September 15, 2025. On September 4, 2025, General Manager Asbury instructed staff to prioritize six projects from Z-Global and to put everything else aside, including the data center facility study. Because upper management prioritized six projects, which we later concluded were associated with Z-Global. This directive contradicts IID's previous written commitment and **constitutes unequal treatment among applicants**. The delay, despite technical clearance, is inconsistent with the OATT's due diligence requirement and undermines confidence in IID's impartial administration of its tariff obligations.

8.3 Improper 15-Year Prepayment Requirement: During the meeting of September 16, 2025, General Manager Asbury said that IID could not provide power service

unless IVCM prepaid for 15 years of electricity. This amounts to $4 billion and is not found anywhere in the OATT. On the contrary OATT §11 mandates only "reasonable credit review procedures in accordance with standard commercial practices." The 15-year demand is therefore unsupported, commercially unreasonable, and discriminatory under the OATT, FERC, and federal law.

8.4   NON-NEUTRAL ADMINISTRATION OF IID'S TARIFF OBLIGATIONS: Also, on August 22, 2025, General Manager Asbury canceled a meeting with the resource department. The email stated: "IID management [Jamie Asbury] has requested to cancel the meeting today due to the need to have some internal conversations before being ready to talk about power supply." This further delayed this process. When combined with project reprioritization in favor of Z-Global, these actions collectively suggest **non-neutral administration of IID's tariff obligations**.

### 9 - RETALIATION AND PROCEDURAL VIOLATIONS

9.1   ATTEMPT TO PRECLUDE STAFF ACCESS: On October 17, 2025, General Manager Asbury replied that she believed that the allegations in the prior email were serious and because litigation was mentioned, IVCM could no longer contact staff. (attached as **EXHIBIT 16**). This email is the standard play book by General Manager Asbury to further delay the project.

9.2   IVCM REPLY TO DENIAL OF ACCESS TO STAFF: IVCM responded on October 17, 2025, that IVCM's statement of intent to exercise its rights under OATT §12.3 does not preclude it from communicating with IID staff. General Manager Asbury's actions are inconsistent with both the OATT and the First Amendment, and directly obstruct the ongoing development of a $10 billion data center project that satisfied every technical and procedural requirement before IID. (attached as **EXHIBIT 17**). OATT's § 12.2(External Arbitration Procedures) specifically exist to resolve disagreements while allowing the applicant to continue working with staff in good faith.

9.3   DENIAL OF ACCESS CONSTITUTES RETALIATION: General Manager Asbury's directive obstructs a live project and represents government retaliation for protected speech.

Page 13

IID is a public agency, and IVCM has a First Amendment right to petition IID regarding grievances, including the right to assert its intent to seek remedies before FERC, federal, or state courts. General Manager Asbury has no legal basis to obstruct the data center project or deny communication with IID's personnel carrying out the IID's technical obligations.

## CAUSES OF ACTION

### COUNT 1 - VIOLATION OF IID OPEN ACCESS TRANSMISSION TARIFF

(Against Respondent Imperial Irrigation District and General Manager Jamie Asbury)

10.1 Claimant realleges and incorporates by reference all preceding paragraphs of this Statement of Claim as though fully set forth herein.

10.2 IID's Open Access Transmission Tariff ("OATT") imposes binding obligations to provide non-discriminatory, transparent, and timely interconnection service to any eligible customer meeting the technical and procedural requirements of the tariff.

10.3 IID's own studies—including the Feasibility Study (May 22 2025) and System Impact Study (July 25 2025)—confirmed that Claimant's proposed 250 MW and 80 MW data-center loads were technically feasible and caused no violations of voltage, thermal, or stability limits.

10.4 Notwithstanding these findings, IID—acting through its General Manager, Jamie Asbury—unlawfully suspended the Facility Study phase and cancelled previously scheduled engineering meetings on August 22 2025, citing "management review," without any technical or tariff-based justification.

10.5 IID's conduct constitutes a violation of OATT §§ 3.4, 7, and 8, which require IID to process interconnection requests on a fair, non-preferential, and timely basis.

10.6 IID further violated its obligation under § 12.1 ("Dispute Resolution and Arbitration") by using administrative delay and internal obstruction in place of the required transparent tariff procedures.

10.7 As a direct and proximate result, Claimant suffered economic damages, project delays, and the loss of financing opportunities for the 330 MW Imperial Valley AI Datacenter campus.

## COUNT 2 - BREACH OF CONTRACT (FACILITY STUDY AGREEMENT)
### (Against Respondent Imperial Irrigation District)

11.1  Claimant executed, and IID subsequently countersigned a written Facility Study Agreement for the 250 MW Data Center #1 interconnection on the 230 kV S-line.

11.2  IID's System Impact Study having been completed and approved, the Facility Study Agreement obligated IID to commence and complete the Facility Study within six weeks, using remaining study funds already paid by Claimant.

11.3  IID breached that agreement by refusing to begin or complete the Facility Study, cancelling the August 22 2025 meeting, and diverting engineering resources to unrelated projects under the direction of General Manager Asbury.

11.4  IID's refusal to perform was willful and without lawful excuse, constituting a material breach of contract.

11.5  As a result, Claimant incurred significant damages, including sunk costs, carrying charges on land and equipment, loss of third-party investment, and impairment of project financing.

## COUNT 3 - ARBITRARY AND CAPRICIOUS CONDUCT / DISCRIMINATION UNDER PUBLIC UTILITY LAW
### (Against Respondent Imperial Irrigation District and Jamie Asbury)

12.1  IID is a public power utility organized under the California Water Code and is obligated to operate in a non-arbitrary, transparent, and non-discriminatory manner consistent with California Water Code § 20532 and public-utility principles.

12.2  Respondent Asbury's unilateral cancellation of the Facility Study, and her directive to prioritize Z-Global projects ahead of Claimant's, constitutes arbitrary and capricious administration of IID's public duties.

12.3  Such conduct constitutes unlawful discrimination between similarly situated applicants and an abuse of discretion inconsistent with IID's charter and statutory obligations.

12.4  Claimant seeks declaratory and injunctive relief compelling IID to perform its ministerial obligations in good faith and to cease discriminatory interference with Claimant's project.

## COUNT 4 - TORTIOUS INTERFERENCE WITH CONTRACTUAL AND PROSPECTIVE BUSINESS RELATIONS

(Against Respondent Jamie Asbury, Individually and in Official Capacity)

13.1    Claimant had valid contractual relationships with IID under the executed study agreements and prospective business relationships with project investors and technology partners dependent on IID's timely completion of those studies.

13.2    Respondent Asbury, with knowledge of those relationships, intentionally interfered by directing IID staff to delay and suspend work, issuing retaliatory emails to Claimant, and reassigning engineering resources to unrelated projects.

13.3    Such interference was done with malice, motivated by favoritism toward competing consultants and animus toward Claimant's lawful requests for tariff-compliant treatment.

13.4    As a direct and proximate result, Claimant sustained measurable economic harm and reputational injury.

## COUNT 5 - DECLARATORY AND EQUITABLE RELIEF

(Against Respondent Jamie Asbury, Individually and in Official Capacity)

14.1    An actual controversy exists between Claimant and Respondents regarding the parties' respective rights and obligations under IID's OATT and the executed interconnection agreements.

14.2    Claimant is entitled to declaratory and equitable relief determining that IID's technical studies confirm project feasibility and compelling IID to perform its remaining ministerial duties.

WHEREFORE IVCM prays for judgment against IID as follows:

(1).    A declaration that IID General Manager, Jamie Asbury, violated the OATT by not processing the facility study in accordance with procedures provided for in the OATT.

(2).    A declaration that IID General Manager, Jamie Asbury, violated the OATT by requiring non-grid-connected backup generators to apply for interconnection.

(3).    A declaration that IID General Manager, Jamie Asbury, violated the OATT by requiring a prepayment of electricity for 15 years to secure a service agreement.

Page 16

(4). A declaration that IID General Manager, Jamie Asbury, violated the OATT by attempting to preclude access to staff for informing her that her violations permit arbitration of that dispute accordance with procedures provided for in the OATT.

(5). A declaration that IID General Manager, Jamie Asbury, violated the OATT by giving preference to Z-Global for its project and thereby delaying the data center project.

(6). A declaration that IID General Manager, Asbury, violated the OATT by denying a service agreement upon completion of a system impact study with no impacts.

(7). An ORDER mandating that IID to finalize the facility study immediately;

(8). An ORDER that non-grid-connected backup generators are not required to apply for interconnection; and

(9). An ORDER mandating IID to issue a letter confirming IID's commitment to serve the data center load.

Respectfully submitted,

LAW OFFICES OF SEBASTIAN RUCCI, P.C.

Date: October 20, 2025

*[signature]*

Sebastian Rucci (SBN 178114)
Attorney for complainant IVCM

ATTORNEY'S CERTIFICATE OF SERVICE BY E-MAIL

I, Sebastian Rucci, CERTIFY that I am an active member of the State Bar of California and am not a party to this cause. My business address is 16400 Pacific Coast Highway, Suite 212, Huntington Beach, CA 92649.

I FURTHER CERTIFY THAT on October 20, 2025, the **ARBITRATION STATEMENT** was served electronically on IID's General Counsel, Wayne Strumpfer at wkstrumpfer@iid.com. The transmission was complete and without error and I did not receive an electronic notification to the contrary.

LAW OFFICES OF SEBASTIAN RUCCI, P.C.

Date: October 20, 2025

*[signature]*

Sebastian Rucci (SBN 178114)
Attorney for complainant IVCM

## **TABLE OF EXHIBIT**

Ex. 1 Load Injection Memo by Power Engineer (12-04-24)

Ex. 2 Application for Sensitivity for Data Center #1 (4-15-25)

Ex. 3 Feasibility Study Agreement by IID for Data Center #1 (3-11-25)

Ex. 4. Feasibility Study Report by IID for Data Center #1 (5-22-25)

Ex. 5 System Impact Study Agreement for Data Center #1 (6-12-25)

Ex. 6 System Impact Study Report by IID for Data Center #1 (7-25-25)

Ex. 7 Application for System Impact Study for Data Center #2 (3-05-25)

Ex. 8 System Impact Study Agreement by IID for Data Center #2 (4-28-25)

Ex. 9 System Impact Study Report by IID for Data Center #2 (9-23-25)

Ex. 10 Facilities Study Agreement by IID for Data Center #1 and #2 (9-03-25)

Ex. 11 Email to Jamie Asbury - Wholesale Market Proposal (10-02-25)

Ex. 12 Email from Jamie Asbury - Rejecting Proposal and Reconfiguring Project (10-14-25)

Ex. 13 Email to Jamie Asbury - Project is Being Reconfigured Improperly (10-14-25)

Ex. 14 Email from Jamie Asbury - Illegal Reconfiguration of Project (10-17-25)

Ex. 15 Email to Jamie Asbury - Identifying Misstatements (10-17-25)

Ex. 16 Email from Jamie Asbury - No Contact With Staff (10-17-25)

Ex. 17 Email Response to Jamie Asbury - Rejecting Retaliatory Request (10-17-25)