Konrad M. Rasmussen, Esq. (SBN 157030)
Brett L. Cirincione, Esq. (SBN 330807)
Michael D. Alvarez, Esq. (SBN 362066)
McCORMICK, MITCHELL & RASMUSSEN
8885 Rio San Diego Drive, Suite 227
San Diego, CA 92108
Tel:   (619) 235-8444
Fax:   (619) 294-8447

Attorneys for Defendants CITY OF IMPERIAL, KATHERINE
BURNWORTH, DENNIS MORITA, KATIE TURNER
and OTHON MORA

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPERIAL VALLEY COMPUTER MANUFACTURING, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF IMPERIAL, a California municipal corporation; KATHERINE BURNWORTH in her individual capacity; DENNIS MORITA in his individual capacity; KATIE TURNER in her individual capacity; and OTHON MORA in his individual capacity,<br><br>Defendants. | Case No.: 26CV128 JLS BJW<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**<br><br><br>Date: Thursday, April 9, 2026<br>Time: 1:30 p.m.<br>Courtroom: 4D<br>Judge: Hon. Janis L. Sammartino |

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

**TABLE OF CONTENTS**

I.    INTRODUCTION................................................................................................ - 1 -

II.   DISCUSSION ................................................................................................... - 1 -

    A.   The City's Approval Process is Discretionary and did Not Create an Entitlement- 1 -

    B.   The Data Center Project was Not Ministerial........................................................ - 3 -

    C.   Plaintiff was Required to Avail Itself to State Law Procedures .......................... - 4 -

    D.   Plaintiff has Not Alleged Protected Speech Causally Connected to Defendants' Conduct ................................................................................................................. - 5 -

    E.   The City is Subject to *Noerr-Pennington* Immunity ............................................ - 6 -

    F.   Plaintiff's Equal Protection Claim is Inadequately Pled ..................................... - 7 -

        i.    A Rational Basis Exists for the City's Decision............................................ - 7 -

        ii.   Plaintiff has Not identified Similarly Situated Individuals .......................... - 8 -

    G.   Plaintiff's *Monell* Claim is Similarly Deficient..................................................... - 8 -

    H.   The Limited Conduct Attributed to the Individual Defendants Warrants a Finding of Qualified Immunity................................................................................. - 9 -

III.  CONCLUSION ................................................................................................. - 9 -

**TABLE OF AUTHORITIES**

**Cases**

*Arroyo Vista Partners v. County of Santa Barbara*
    732 F.Supp. 1046 (C.D. Cal. 1990) ................................................................. 5

*B & L Productions, Inc. v. Newsom*
    104 F.4th 108, 114 (9th Cir. 2024) ................................................................. 6

*Enguist v. Oregon Dept. of Agriculture*
    478 F.3d 985 (9th Cir. 2007) ......................................................................... 8

*Evans Hotels, LLC v. Unite Here Local*
    433 F.Supp.3d 1130 (S.D. Cal. 2020) ........................................................... 7

*F.C.C. v. Beach Communications, Inc.*
    508 U.S. 307 (1993) ................................................................................... 8, 9

*Felder v. Casey*
    487 U.S. 131 (1988) ...................................................................................... 4

*Gini v. Las Vegas Metropolitan Police Department*
    40 F.3d 1041 (9th Cir. 1994) ......................................................................... 7

*Lake Nacimiento Ranch Co. v. San Luis Obispo County*
    841 F.2d 872 (9th Cir. 1987) ......................................................................... 5

*Las Lomas Land Cod., LLC v. City of Los Angeles*
    177 Cal.App. 4th 837 (2009) ...................................................................... 2, 3

*Los Angeles v. Heller*
    475 U.S. 796 (1986) ...................................................................................... 9

*Lyng v. Automobile Workers*
    485 U.S. 360 (1988) ...................................................................................... 8

*Mulligan v. Nichols*
    835 F.3d 981 (9th Cir. 2016) ......................................................................... 7

*Nunez v. City of Los Angeles*
    147 F.3d 867 (9th Cir. 1998) ......................................................................... 7

*Sellars v. Procunier*
    641 F.2d 1295 (9th Cir. 1981) ..................................................................... 11

*Shawnee Sewerage & Drainage Co. v. Stearns*
    220 U.S. 462 (1911) .................................................................................... 10

*Sullivan v. Stroop*
    496 U.S. 478 (1990) ...................................................................................... 8

*White v. Lee*
    277 F.3d 1214 (9th Cir. 2000) ....................................................................... 7

**Statutes**

14 California Code of Regulations § 15368 ........................................................ 3
14 California Code of Regulations § 15369 ........................................................ 3
California Civil Code § 1094.5 ........................................................................... 5
Imperial Zoning Code § 24.07.120 ................................................................. 3, 8
Imperial Zoning Code § 24.19.500 ..................................................................... 1

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Imperial Zoning Code § 24.19.510(B)(3) ...................................................................................... 2
Imperial Zoning Code § 24.19.510(B)(5) ...................................................................................... 2
Imperial Zoning Code § 24.19.530(G) .......................................................................................... 1
Imperial Zoning Code § 24.19.540 ................................................................................................ 1
Imperial Zoning Code § 24.19.540(B) ........................................................................................... 1
Imperial Zoning Code § 24.19.541(B) ........................................................................................... 2
Imperial Zoning Code § 24.19.550 ............................................................................................ 1, 2
Imperial Zoning Code § 24.19.560 ................................................................................................ 4

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## I.   <u>INTRODUCTION</u>

The Opposition does little more than regurgitate the same circular logic and conclusions of law presented ad nauseam in the Complaint. The unprecedented 95-acre data center is not a ministerial project simply because Plaintiff labels it as such, and Plaintiff is not entitled to project approval by virtue of its misinterpretation of the City's Zoning Code.  It is clear from the Complaint's allegations and matters subject to judicial notice that Plaintiff was not deprived of any entitlement which would support its procedural due process claim. It is further evident the related conduct attributed to the City and individual Defendants does not plausibly allege other violations of Plaintiffs Constitutional rights under the First or Fourteenth Amendments. Therefore, Defendants' Motion to Dismiss should be granted.

## II.   <u>DISCUSSION</u>

### A.  The City's Approval Process is Discretionary and did Not Create an Entitlement

Imperial's Zoning Code gives the Planning Director (Defendant Mora) broad authority "to approve, deny or modify applications for Site Plan Review. Imperial Zoning Code § 24.19.550; Request for Judicial Notice, ¶ 1 and Exhibit 1 thereto. Section 24.19.540 specifically establishes the Director's discretion to "specify modifications, changes, and additions to the Development Plan in his recommendation or requirements for its approval." Imperial Zoning Code § 24.19.540, subd. (B) ; Request for Judicial Notice, ¶ 1 and Exhibit 1 thereto. This discretion includes recommendations "by the Director to eliminate or mitigate significant adverse environmental effects disclosed by any environmental impact report [as well as] modifications, changes and additions that are necessary to meet the purposes of" section 24.19.500. *Id*.  The Director also has discretion to "require additional data as deemed necessary to the decision-making process," just as Defendant Mora did with Plaintiff's application. Imperial Zoning Code § 24.19.530, subd. (G) ; Request for Judicial Notice, ¶ 1 and Exhibit 1 thereto.

The Opposition's argument that site plan review procedure focuses only on "design principles" is disingenuous. The purposes of the ordinance include "[m]aintain[ing] the public

- 1 -
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

health, safety and general welfare, and property throughout the City," and ensuring that new industrial developments do not have adverse effects on health, adjoining properties or the City in general. Imperial Zoning Code § 24.19.510, subd. (B)(3) & (B)(5); Request for Judicial Notice, ¶ 1 and Exhibit 1 thereto.

The Opposition claims the site plan application process is not discretionary because "[t]he City lacked discretion to withhold approval once the [fifteen (15) day] statutory period lapsed." Opposition, Page 9, Lines 10-14. However, this argument is premised on an erroneous interpretation of section 24.19.550. An application is only deemed approved if the Director fails to act "[w]ithin fifteen (15) days of the date that the application **is deemed complete by the Director**." [Emphasis added] Imperial Zoning Code § 24.19.541, subd. (B) Request for Judicial Notice, ¶ 1 and Exhibit 1 thereto. Thus, the fifteen (15) day period does **not** begin at the time an application is submitted. The fact that it is the Planning Director who ultimately determines when that clock begins to run demonstrates significant discretion is afforded to the City in the site plan approval process. See again *Las Lomas Land Cod., LLC v. City of Los Angeles*, 177 Cal.App. 4th 837, 853 (2009) ("A benefit is not a protected property interest under the due process clause if the decision maker has the discretion to grant or deny the benefit.")

The Complaint does not plead facts indicating Defendant Mora deemed any of Plaintiffs applications complete. This requirement is mentioned only once with regard to the May 15, 2025 revised site plans. The Complaint alleges Mr. Mora sent an email on May 27, 2025 stating, "Thank you for your submission. We have received the documents and will begin our review." Complaint, ¶ 37. It further alleges Plaintiff's application was deemed complete 12 days earlier "[s]ince that email did not ask for anything else." *Id*. However, such a conclusion is illogical. How could Mr. Mora deem the application complete before he reviewed it?

Because none of Plaintiff's applications were ever deemed complete by the Planning Director, they were not yet subject to the fifteen (15) day approval provision. Defendant Mora had authority to modify or deny each application and discretion to establish additional

- 2 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

requirements. Therefore, the Complaint does not plausibly allege deprivation of Plaintiff's right to procedural due process. See *Las Lomas Land Cod., LLC, supra* ("[A] land use application invokes procedural due process only if the owner has a legitimate claim of entitlement to the approval….").

### B. The Data Center Project was Not Ministerial

Plaintiff's entire lawsuit is based on the misguided assumption that its data center constitutes a ministerial project. A "ministerial" decision under CEQA is one "involving little or no personal judgment by the public official as to the wisdom or manner of carrying out the project." 14 Cal. Code Reg. § 15369. However, Defendant Mora has broad discretionary authority under the Zoning Code to approve, deny or modify site plan applications as he deems necessary. Thus, the Site Plan Application procedure is, as a matter of law, not ministerial. Nonetheless, the determination of what is "ministerial" is most appropriately made by "the particular public agency involved based upon its analysis of its own laws," and can be made on a case-by-case basis. 14 Cal. Code Reg. § 15268. It is evident on the face of the Complaint that the City of Imperial analyzed the applicable Zoning Code provisions and determined Plaintiff's project was not subject to ministerial approval. Plaintiff's disagreement with this determination does not create a viable claim under section 1983.

It is clear a ministerial approval of Plaintiff's project was not appropriate under the circumstances. A data center is not included as either a permitted or a conditional use under the City's Zoning Code. The Opposition's argument that a "similarity of use" procedure should have been implemented is untenable. The types of businesses listed on Page 10 of the Opposition are either permitted or conditional uses for the I-2 zone. See Imperial Zoning Code § 24.07.120; Request for Judicial Notice, ¶ 2 and Exhibit 2 thereto (Permitted/conditional uses include: distributors, lumber storage yards, gasoline dispensers, manufacturers, storage warehouses and building equipment sales). Plaintiff's 95-acre data center would require 750 thousand gallons of reclaimed water per day. The project is unprecedented in its scale

///

///

- 3 -
REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

and the community resources it would require. As such, it is wholly dissimilar to the I-2 zone businesses referenced in the Opposition.[1]

Undoubtedly, the data center project was not exempt from CEQA review.

## C. Plaintiff was Required to Avail Itself to State Law Procedures

The Opposition cites to *Felder v. Casey*, 487 U.S. 131 (1988) to support its argument that Plaintiff was not required to exhaust state law administrative remedies prior to bringing a section 1983 claim. This argument is misleading. *Felder* addresses a state law "notice-of-claim" statute which required a section 1983 plaintiff to "provide the requisite notice of injury within 120 days of the civil rights violation, then wait an additional 120 days while the governmental defendant investigates the claim and attempts to settle it." *Id.* at 146. The case specifically addresses the inability of state legislatures to place administrative limits on an individual's ability to bring a section 1983 claim. Defendants' motion does not address any such provision.

Rather, Defendants argue Plaintiff is incapable of stating a claim for procedural due process if it has not first sought compensation through available state remedies. See *Lake Nacimiento Ranch Co. v. San Luis Obispo County*, 841 F.2d 872, 879 (9th Cir. 1987) ("[S]ection 1983 claim is barred because there is an available state remedy."); See also *Arroyo Vista Partners v. County of Santa Barbara*, 732 F.Supp. 1046, 1053 (C.D. Cal. 1990) (A section 1983 claim for deprivation of procedural due process is barred "whenever a procedure for redress of a deprivation of procedural due process is available under state law."). Again, Plaintiff neither availed itself of the appeal process under section 24.19.560 of Imperial's Zoning Code nor sought judicial review of Defendant Mora's decision with the Superior Court. As a result, his procedural due process claim is barred.

The Opposition claims there was nothing for Plaintiff to appeal because "the Complaint alleges deemed approvals by operation of law, not merely appealable denials."

---

[1] Defendants concede their Points and Authorities mistakenly states Plaintiff's data center will require 6 million gallons of reclaimed water, as opposed to the 750,000 gallons per day actually alleged in the Complaint. Defendants' mistake was inadvertent and stemmed from the allegations set forth in paragraph 101 of the Complaint.

- 4 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Opposition, Page 11, Lines 13-14. However, Plaintiff should not be permitted to argue out of both sides of its mouth. If there was no adverse decision to appeal, how can there be a procedural due process violation? Plaintiff obviously takes issue with Mr. Mora's determination that its data center project was not ministerial and that a CEQA review was required. This decision was subject to both the administrative appeal procedure and judicial review under California Civil Code section 1094.5.

### D.  Plaintiff has Not Alleged Protected Speech Causally Connected to Defendants' Conduct

The Opposition claims the following constituted Plaintiff's protected speech: "(1) insisting on strict compliance with the City's ministerial review process; (2) petitioning Imperial County for land use approvals; (3) speaking publicly to counter the City's narrative about the project and (4) threatening litigation." Opposition, Page 12, Lines 5-9. The first two categories of speech clearly pertain entirely to Plaintiff's business dealings and are, therefore, not constitutionally protected. See *B & L Productions, Inc. v. Newsom*, 104 F.4th 108, 114 (9th Cir. 2024) (business agreements and business dealings are "nonexpressive conduct unprotected by the First Amendment."). Plaintiff entirely ignores this argument.

Regardless, the Complaint does not adequately plead a causal nexus between these four categories of speech and the "retaliatory" conduct attributed to Defendants. First, "insisting on strict compliance with the City's ministerial review process" references nothing more than a disagreement between Plaintiff and Defendant Mora regarding the appropriate interpretation of the City's ordinances. Again, the City is in the best position to determine which approvals are ministerial. It is nonsensical to suggest the City evaluating its laws and making such a determination constitutes first amendment retaliation.

The Opposition relies on generic allegations concerning campaigns by Imperial Irrigation District and "greenmail operatives" from Comité Cívico del Valle. These entities are not agents of the City of Imperial, and the Complaint contains no specific allegations describing the individual Defendants' participation in these campaigns. While the Complaint does allege Defendant Burnworth met with individuals from IID and CCV, the claim that she

- 5 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

"coordinate[d] opposition to force a ministerial project into a discretionary CEQA process," is conclusory and inadequate to plead first amendment retaliation.

The Complaint contains no specific allegations demonstrating who participated in the posting of the City's flyers and "hostile" social-media messaging. Still, the Opposition points to vague allegations that the individual Defendants directed such conduct. Nevertheless, critical government speech is insufficient to constitute First Amendment retaliation. "Restricting the ability of government decisionmakers to engage in speech risks interfering with their ability to effectively perform their duties…. The marketplace of ideas is undermined if public officials are prevented from responding to speech of citizens with speech of their own." *Mulligan v. Nichols*, 835 F.3d 981, 989 (9th Cir. 2016). Even "an act of defamation by government officials [is] insufficient [standing alone] to create a right to a remedy under the First Amendment…." *Id.* (citing *Gini v. Las Vegas Metropolitan Police Department,* 40 F.3d 1041, 1045 (9th Cir. 1994)). "It would be the height of irony, indeed, if mere speech, in response to speech, could constitute a First Amendment violation." *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998).

### E. The City is Subject to *Noerr-Pennington* Immunity

Plaintiff mischaracterizes the City's Petition to the California Superior Court. When compared to the actual legal claims asserted in the Petition, the Complaint's allegations demonstrate nothing more than a legitimate disagreement regarding the interpretation of the County of Imperial's zoning regulations and the extent of the City's role in zoning decisions which affect properties within its sphere of influence. Yet, Plaintiff's attempt to circumvent the *Noerr-Pennington* Doctrine is subject to a heightened pleading standard. *Evans Hotels, LLC v. Unite Here Local*, 433 F.Supp.3d 1130, 1144 (S.D. Cal. 2020). Plaintiff labeling this disagreement a "sham" is insufficient to plausibly allege the non-application of *Noerr-Pennington* immunity.

Moreover, the fact that the City did not prevail in opposing a dispositive motion "does not show that [its] lawsuit was objectively baseless for purposes of *Noerr-Pennington* immunity…." *White v. Lee*, 277 F.3d 1214, 1232 (9th Cir. 2000). A lawsuit which is arguably

- 6 -

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

warranted by existing law or at the very least based on "an objectively good faith argument" is subject to *Noerr-Pennington* immunity. *Id*.

### F. Plaintiff's Equal Protection Claim is Inadequately Pled

#### i.   A Rational Basis Exists for the City's Decision

"Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of [a government official's] choices." *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993).  A governmental decision "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the [decision]. *Id*. (citing *Sullivan v. Stroop*, 496 U.S. 478, 485 (1990)). On rational-basis review, government actions bear "a strong presumption of validity." *Id*. at 314-315 (citing *Lyng v. Automobile Workers*, 485 U.S. 360, 370 (1988)).

As noted in the City's moving papers, Defendant Mora expressed his rational basis for requiring a CEQA review, including the potential that Plaintiff's unprecedented data center project would have substantial impacts on the environment and community at large. See Exhibit 17 to Complaint [DOC 01-18]. The Opposition argues the concerns shared in Mr. Mora's July 15, 2025 email constitute a "calculated pretext." However, the Complaint does not plead these concerns were either illegitimate or based upon an improper motive. [2] Instead, the Complaint alleges the following:

> The Defendants' sudden invocation of 'environmental impact' is a calculated pretext. A genuine environmental steward would not torpedo a project that subsidizes regional water infrastructure and provides a massive, free infusion of freshwater to the Salton Sea.

Complaint, ¶ 103(b).

///

///

---

[2] See *Enguist v. Oregon Dept. of Agriculture*, 478 F.3d 985, 1014 (9th Cir. 2007) ("[A] pretext may be shown by demonstrating 'either: (1) the proferred rational basis was objectively false; or (2) the defendant actually acted based on improper motive.'").

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

It is unclear what relevance Plaintiff's plan to replenish the Salton Sea (a body of water located many miles outside of the City of Imperial) has to its data center's potential environmental impact within the City. The Complaint fails to plead a plausible pretext, and Defendant Mora's rational basis for requiring CEQA review defeats Plaintiff's equal protection claim. See *Beach Communications, Inc.,* 508 U.S. at 313.

ii.   <u>Plaintiff has Not identified Similarly Situated Individuals</u>

The Opposition argues Plaintiff's data center project was "singled out" and subjected to differential treatment. However, a large-scale data center is incomparable to a distributor, manufacturer, building equipment supplier, gasoline dispenser, storage warehouse or lumber storage yard. Each of these supposedly similar businesses squarely fit within the permitted and conditional use categories established by Imperial's Zoning Code. Imperial Zoning Code § 24.07.120; Request for Judicial Notice, ¶ 2 and Exhibit 2 thereto. On the other hand, neither data centers nor any other developments requiring large quantities of energy and water are contemplated for the I-2 zone. Plaintiff's equal protection class of one claim fails for this reason as well.

**G. Plaintiff's *Monell* Claim is Similarly Deficient**

To the extent it shares the same deficiencies discussed above, Plaintiff's Fourth Claim fails to plausibly allege municipal liability against the City of Imperial. See *Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) (municipal liability does not attach absent underlying constitutional violation).

The Opposition argues the City "breaching the reclaimed-water agreement after Plaintiff had incurred expenses" supports *Monell* liability. However, no such agreement existed (see City's Points and Authorities, Pages 21 – 22), and a breach of contract cannot create liability under 42 U.S.C. section 1983. See *Shawnee Sewerage & Drainage Co. v. Stearns*, 220 U.S. 462, 473 (1911) ("The breach of a contract is neither a confiscation of property nor a taking of property without due process of law."). The Opposition entirely ignores the City's argument on this issue. Furthermore, the Complaint does not plead any specific facts demonstrating the City of Imperial "pressure[ed] El Centro to terminate its

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

agreement with Plaintiff." In fact, Plaintiff's allegations indicate no such agreement ever existed.  Complaint, ¶ 92.

As the Complaint fails to identify any policy, practice or custom of the City of Imperial that resulted in a deprivation of Plaintiff's constitutional rights, Plaintiff has failed to state a claim for municipal liability against the City of Imperial.

**H.  The Limited Conduct Attributed to the Individual Defendants Warrants a Finding of Qualified Immunity**

The Opposition confirms the allegations against the individual Defendants are paper-thin. Defendant Mora's legitimate interpretation and enforcement of the City's municipal code did not violate a clearly established right. (See discussion above.) Defendants Turner and Burnworth are not specifically alleged to have taken any action which would rise to the level of a constitutional deprivation. The Opposition solely repeats conclusory allegations that the two participated in a coordinated campaign to obstruct Plaintiff's data center project. However, the extent of their individual participation in this "campaign" is not specified. Plaintiff makes a similar leap in logic with Defendant Morita. The City Manager simply asking for a copy of El Centro's will-serve letter and indicating he plans to contact El Centro does not support the conclusion that he sabotaged a deal with El Centro.

The innocuous conduct attributed to the individual Defendants neither rose to the level of a constitutional deprivation nor clearly violated an established right held by Plaintiff. A determination of qualified immunity is warranted. See *Sellars v. Procunier*, 641 F.2d 1295, 1300 (9th Cir. 1981) (Qualified Immunity should be afforded to public officials "for decisions made in the good faith exercise of their official responsibilities.").

### III.   <u>CONCLUSION</u>

The Motion to Dismiss demonstrates the Complaint fails to state viable constitutional claims against Defendants City of Imperial, Katie Turner, Katherine Burnworth, Othon Mora and Dennis Morita.  The Opposition offers tenable argument to the contrary or potential amendments that could cure the Complaint's deficiencies. Nor does it otherwise indicate how

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Plaintiff can supplement the facts asserted in its extensive Complaint and exhibits to adequately plead section 1983 liability. As such, the motion should be granted with prejudice.

McCORMICK, MITCHELL & RASMUSSEN

Date: April 2, 2026

　　/s/ Brett L. Cirincione　　　　　　

Konrad M. Rasmussen
Brett L. Cirincione
Michael D. Alvarez
Attorneys for Defendants CITY OF IMPERIAL,
KATHERINE BURNWORTH, DENNIS
MORITA, KATIE TURNER,
and OTHON MORA

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT