UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPERIAL VALLEY COMPUTER MANUFACTURING, LLC,<br>Plaintiff,<br>v.<br>CITY OF IMPERIAL, et al.,<br>Defendants. | Case No.: 26-CV-128 JLS (LR)<br><br>**ORDER (1) GRANTING REQUEST FOR JUDICIAL NOTICE, AND (2) GRANTING MOTION TO DISMISS**<br><br>(ECF Nos. 12, 12-2) |

Presently before the Court is Defendants' Request for Judicial Notice ("RJN," ECF No. 12-2), Defendants' Motion to Dismiss ("Mot.," ECF No. 12), Plaintiff Imperial Valley Computer Manufacturing, LLC's ("IVCM") Opposition ("Opp'n," ECF No. 13), and Defendants' Reply (ECF No. 16). Having carefully reviewed the Complaint, the Parties' arguments, and the law, the Court **GRANTS** Defendants' RJN and **GRANTS** Defendants' Motion to Dismiss, as set forth below.

## BACKGROUND

This case arises out of a proposed data center project in the City of Imperial ("the City"). Plaintiff IVCM purchased 194 acres across the City, the County of Imperial, and El Centro with the intention of constructing three contiguous data centers. IVCM alleges that, during the permit application process, the City and other Defendants obstructed by

insisting on discretionary review and ignoring statutory deadlines. Then, when IVCM relocated the proposed project to County land, Defendants launched a coordinated campaign to sabotage the data center. This litigation followed.

Defendants move to dismiss. They argue that IVCM fails to state a claim upon which relief can be granted for each cause of action under Federal Rule of Civil Procedure 12(b)(6). *See* Mot. IVCM's due process and equal protection claims primarily concern actions by the Defendants during the application process with the City. The First Amendment claim primarily concerns actions by the Defendants during the application process with other entities including the County of Imperial.

The Court addresses each argument in turn.

## LEGAL STANDARD

Rule 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original).

To survive a 12(b)(6) motion, then, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

/ / /

When reviewing a motion to dismiss under Rule 12(b)(6), the Court applies its "judicial experience and common sense." *Id.* (citation omitted). Further, "a district court must accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff." *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1020 (S.D. Cal. 2019) (citing *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)). But the Court is not required to accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001).

Where a complaint does not survive 12(b)(6) review, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . could cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

**REQUEST FOR JUDICIAL NOTICE**

As an initial matter, Defendants ask the Court to notice the City of Imperial Zoning Code §§ 24.19.500 *et seq*, 24.07 ("Zoning Code"), the City's Verified First Amended Petition and Complaint for Writ of Mandate with the Imperial Superior Court, and the Superior Court minute order dated February 10, 2026. Request for Judicial Notice, ECF No. 12-2, at 2; *City of Imperial v. Cnty. of Imperial*, No. ECU004457 (Cal. Super. Ct. filed Dec. 4, 2025). IVCM does not oppose the request. *See generally* Opp'n.

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

But a court may also consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" in ruling on a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "Municipal

ordinances are proper subjects for judicial notice." *Tollis, Inc. v. Cnty. of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007). Further, "[i]t is well established that federal courts may take judicial notice of related state court orders and proceedings." *ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 56 F. Supp. 3d 1121, 1136 (C.D. Cal. 2014) (citing *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006)).

The court finds judicial notice of Exhibits 1–4 to be appropriate, as they are municipal ordinances and related state court proceedings. Accordingly, Defendants' Request for Judicial Notice (ECF No. 12-2) is **GRANTED**.

## DUE PROCESS AND EQUAL PROTECTION CLAIMS

IVCM alleges that Defendants violated constitutional procedural due process and equal protection during the site plan review process. IVCM alleges first that Defendants deprived IVCM of its protected property interest in the approval of the site plans. Compl. ¶¶ 184–86. IVCM also alleges that Defendant's "intentionally treated IVCM differently" than other heavy industrial uses and demanded additional processes "not required of others." *Id.* ¶ 201.

### I. IVCM's Application with the City of Imperial

IVCM met with Defendant Ohtan Mora, the City's Community Development Director, to discuss the proposed data center project in September 2024. Compl. ¶ 21. It was important to IVCM that its proposed project would be ministerially approved under existing zoning ordinances and would not be subject to discretionary review. *Id.* ¶ 20. This was crucial because an amendment to the zoning ordinance would cause significant delay, and a discretionary process would trigger additional review requirements under the California Environmental Quality Act ("CEQA"). *See id.* ¶¶ 16, 20, 39. Director Mora confirmed that the data center was "permitted use" in the contemplated industrial zone as "business, professional, and research offices." *Id.* ¶ 21; Zoning Code § 24.07.120(C). Thus assured, IVCM proceeded.

IVCM submitted its first site plan application for a data center to be built on commercial and industrial land on March 4, 2025. Compl. ¶ 28. After some discussion,

on April 4, Director Mora requested "revised plans and technical studies" as well as "clarification on zoning because the 'data center' and 'substation' are not listed as uses." *Id.* ¶ 33. IVCM submitted revised plans and argued that the project was a permitted use. *Id.* ¶ 35. Throughout the application process, IVCM continued to assert that no zoning amendment was necessary; the data center was either a permitted use or could be ministerially approved as a similar use. *Id.* ¶ 55. But Director Mora denied the application on July 15. *Id.* ¶¶ 57, 61. Mora determined both an environmental assessment and a zoning amendment would be necessary. *Id.*

In response, IVCM submitted another application that was located only on industrial land. *Id.* ¶ 64. It was rejected by Director Mora twenty-nine days later. *Id.* ¶ 69. Mora stated the zoning ordinance did not specifically identify data centers as either permitted or conditional use, and the City would require a zoning code text amendment. *Id.* IVCM withdrew the application the next day. *Id.* ¶ 71.

## II. IVCM's Procedural Due Process Claim

Defendants argue that IVCM did not state a claim for a violation of procedural due process because it withdrew from the available process to review adverse decisions by Director Mora. Defendants' Memorandum of Points and Authorities in Support at 12 ("Memo," ECF No. 12-1). But even if the claim was not barred, Defendants argue IVCM does not allege a protected interest in site plan approval. Memo at 10–11.

In opposition, IVCM argues that, first, exhaustion is not required for a § 1983 procedural due process claim. Opp'n at 11. Second, the approval process is mandatory rather than discretionary since it is based on objective standards and, therefore, IVCM had a protected property interest upon applying in compliance with those standards. *Id.* at 8. Third, even if the approval process is discretionary, the failure of Director Mora to act within fifteen days of submission constituted an approval and the later rejection was, in fact, a withdrawal of approval. *Id.* at 7–9.

The Court finds that IVCM has failed to allege a violation of procedural due process. Each of Defendants' arguments merits dismissal.

### *A. IVCM Cannot Allege Defendants Violated Procedural Due Process When an Adequate Remedy for Error was Available*

Defendants argue that, as a threshold matter, IVCM's due process claim is barred because even if Director Mora's decision to require the discretionary process and environmental review was erroneous, there was an adequate procedure available to redress such an error. *See* Memo at 17. The Court agrees.

A procedural due process inquiry "turns on whether the City has denied [the plaintiff] a constitutionally adequate remedy." *Kagan v. City of Los Angeles*, No. 21-55233, 2022 WL 16849064, at *2 (9th Cir. Nov. 10, 2022). Administrative exhaustion is not a categorical requirement for § 1983 claims. *Felder v. Casey*, 487 U.S. 131, 148 (1988). But a plaintiff cannot "state a claim for denial of procedural rights when he has elected to forego a complete hearing." *Correa v. Nampa Sch. Dist. No. 131*, 645 F.2d 814, 817 (9th Cir. 1981) (citing *Bignall v. N. Idaho Coll.*, 538 F.2d 243, 247 (9th Cir. 1976); *cf. Chiaro v. City of Tempe*, No. CV-25-01968-PHX-ROS, 2026 WL 507541, at *9 (D. Ariz. Feb. 24, 2026) (collecting cases holding that a plaintiff cannot state a procedural due process violation when they voluntarily terminate their employment).

A state provides an adequate remedy when it offers a reasonable process to correct errors by a local administrative body. *Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*, 841 F.2d 872, 879 (9th Cir. 1987); *Arroyo Vista Partners v. Cnty. of Santa Barbara*, 732 F. Supp. 1046, 52–53 (C.D. Cal. 1990). In other words, the existence of an adequate state remedy to redress an error by a local body invalidates the conclusion that such an error is a due process violation. *See Parratt v. Taylor*, 451 U.S. 527, 542 (1981), *overruled by Daniels v. Williams*, 474 U.S. 327 (1986) (quoting *Bonner v. Coughlin*, 517 F.2d 1311, 1319 (7th Cir. 1975), *on reh'g,* 545 F.2d 565 (7th Cir. 1976), and *abrogated by Hudson v. Palmer*, 468 U.S. 517 (1984)).

Defendants contend, and IVCM does not dispute, that a decision by the Planning Director in the City of Imperial may be appealed in writing to the Planning Commission. *See* Zoning Code § 24.19.560; Reply at 5. Further, decisions by the Planning Commission

are subject to judicial review before the Superior Court of California. Cal. Civ. Proc. Code § 1094.5 (West).

When City Manager Dennis Morita stated "a public process was necessary for a data center," IVCM decided to "proceed with the project on industrial land in the County" and withdrew the application with the City. Compl. ¶ 79. But IVCM could have appealed the determination that a public process was necessary to either the Planning Commission or Superior Court. IVCM may not abandon its application and then claim it was denied due process.

### *B. IVCM Does Not Have a Protected Interest in Submitted Site Plans*

Defendants argue that, even if IVCM's due process claim was not barred, IVCM has not alleged a protected property interest. Defendants do not dispute that IVCM's site plan applications comply with all objective standards laid out in the pertinent sections of the zoning ordinance. *See generally* Opp'n; Reply. However, they argue that due to discretionary nature of the review, the submission of conforming plans did not give rise to a protected property interest. Memo at 10. Because the Zoning Code grants the Planning Director discretion in the site plan review process, the Court finds IVCM has failed to allege a protected interest based on the submitted plans.

Although IVCM alleges that Director Mora lacks discretion in the site plan review process, Compl. ¶ 14, the Court need not take conclusory statements of law as fact. *Sprewell*, 266 F.3d at 988. Therefore, the legal issue is whether the Zoning Code granted IVCM a protected interest in site plan approval upon the submission of conforming applications.

#### *1. Legal Standard*

Notwithstanding the high burden imposed upon a defendant seeking to dismiss a complaint, "a federal claim involving land use must be viewed with particular scrutiny because it challenges local zoning decisions, a sensitive area of social policy best resolved without resort to federal court intervention, absent sufficient allegations of constitutional error." *Arroyo Vista Partners*, 732 F. Supp. at 1050.

To state a procedural due process claim, the complaint must allege; (1) a protected liberty or property interest; (2) deprivation of that interest; and (3) inadequate process. *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). "Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).

To have a protected interest, a person must have more than "a unilateral expectation"; he must "have a legitimate claim of entitlement to it." *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 756 (2005). Whether such discretion exists is a question of federal law determined by reference to state and local law. *Id.* at 757; *WMX Techs., Inc. v. Miller*, 80 F.3d 1315, 1318 (9th Cir. 1996), *on reh'g en banc,* 104 F.3d 1133 (9th Cir. 1997).

In some cases, a person can have a constitutionally protected property interest in a government permit before it issues. *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1019 (9th Cir. 2011) (citing *Roth*, 408 U.S. at 577). When a state or local law "requires that the permit be issued once certain requirements are satisfied," "an entitlement to a government permit exists." *Id.* (holding the property owner did not have a property interest in a road permit); *Groten v. California*, 251 F.3d 844, 850 (9th Cir. 2001); *Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988). In other words, plaintiffs have a property interest when regulations provide that, "once an applicant's building plans comply with the code and other applicable laws and the fees are paid, the building official *must* issue a building permit to the applicant." *Bateson*, 857 F.2d at 1303. ("These regulations do not provide for review by the City Council before a building permit can issue.").

"To conclude that state law establishes a protected property right, . . . the law must be phrased so as to mandate or direct that a state actor reach a particular result." *Hillel v. City of Agoura Hills*, No. CV078097JFWAJWX, 2010 WL 11596668, at *5 (C.D. Cal. Dec. 22, 2010) (citing *Grabhorn, Inc. v. Metro. Serv. Dist.*, 624 F. Supp. 2d 1280, 1286

(D. Or. 2009)). In *Clark v. City of Hermosa Beach*, the California Court of Appeal held that a use permit review that mandated certain statutory minimum standards was discretionary because the statute explicitly authorized the reviewing body to impose standards above the minimums. 48 Cal. App. 4th 1152,1182 (1996), *as modified on denial of reh'g* (Sept. 11, 1996) ("On a case basis, the planning commission may impose standards above the minimums designated by the zoning ordinance to improve the quality of development and to mitigate any environmental impacts.").

However, even with mandatory language, there is no protected property right if the required criteria involve "the exercise of discretion by the reviewing body." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164–65 (9th Cir. 2005). For example, in *Hillel*, the court found that, despite mandatory language in the statute, the reviewing authority had sufficient discretion to defeat a procedural due process claim on summary judgment because approval was contingent on subjective standards. 2010 WL 11596668, at *5–6. There, the relevant statutes provided, *inter alia*, that the reviewing authority "shall approve a site plan if it makes all of the findings specified in these sections." *Id.* But in making the relevant findings, the reviewing authority was "vested with significant discretion." *Id.* at 6 (listing "determining whether the proposed project will create traffic hazard or congestion, whether it is in harmony with its surroundings, and whether it is in keeping with the character of the surrounding neighborhood").

*2. Analysis*

The Court is cognizant of IVCM's heavy burden to state a claim challenging local zoning decisions, *Arroyo Vista Partners*, 732 F. Supp. at 1050, and of Defendants' heavy burden to dismiss a claim at this stage of the proceeding, *Wi-LAN Inc.*, 382 F. Supp. 3d at 1020. Here, IVCM has failed to meet its burden. IVCM does not allege a protected property interest necessary to state a claim for procedural due process.

The Zoning Code requires "any applicant for a building permit for the establishment of . . . commercial or industrial[] uses. . . shall submit the following plans and drawings to the Director of Planning for review . . . ." Zoning Code § 24.19.53.

The section governing the scope of review and evaluation reads:

> Scope. The Director shall review and evaluate development plans for conformance with the site plan review standards and criteria set forth in the pertinent sections of the Zoning Ordinance.

Zoning Code § 24.19.540. The standards and criteria for commercial and industrial zones are listed under Zoning Code §§ 24.05, 24.07. These include "setbacks, ingress and egress, circulation, parking, landscaping, screening of HVAC unites, and enclosure of outdoor storage areas." Opp'n at 7.

The Code later provides:

> Modifications Required for Approval of the Development Plan. The Director *may specify* modifications, changes, and additions to the Development Plan in his recommendation or requirements for its approval. Such recommendations may be suggested by the Director to eliminate or mitigate significant adverse environmental effects disclosed by an environmental impact report or modifications, changes and additions *that are necessary to meet the purposes of this Section.*

Zoning Code § 24.19.580 (emphasis added). The purpose of the site plan review includes, *inter alia*, "[m]aintain[ing] the public health, safety and general welfare, and property throughout the City." Zoning Code § 24.19.510(B)(3); Reply at 1–2.

A plain and ordinary reading of the statute does not support IVCM's interpretation. Unlike the statute in *Hillel*, the Imperial's Zoning Code does not have explicit language mandating approval by the Planning Director. Without such language, it is difficult to find that the law required approval without discretion. IVCM points to the scope delineated in § 24.19.540(A), which requires the Director to "review and evaluate" for conformance with objective criteria laid out in the zoning ordinance. However, the Court reads this as a minimum threshold, not a ceiling. *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003); *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1054 (9th Cir. 2018).

Additionally, reading subsection A as an exclusive expression would contradict the plain language of subsection B. Section 24.19.540(B) further authorizes the Planning Director to impose "modifications, changes, and additions," above the minimum standards

in the Zoning Ordinance, "necessary to meet the purposes of this Section." The Court finds IVCM's reading of subsection A, limiting the Planning Director to only the objective standards in the Zoning Ordinance, would render subsection B incoherent because it requires reference to the subjective statements of purpose. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000) ("A court must therefore interpret the statute 'as a symmetrical and coherent regulatory scheme.'") (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995)).

Especially considering the subjective nature of the "purposes of this Section," the Court finds the Planning Director is vested with significant discretion to approve, deny, or modify applications that otherwise comply with the Zoning Ordinance. IVCM has failed to allege it had a protected interest in the approval of its site plan upon submission.

### ***C. The Expiration of a Statutory Deadline Does Not Give Rise to a Protected Interest***

In the alternative, IVCM argues that even if Director Mora had discretion to deny the applications, each application was approved by Mora's failure to act within fifteen days of completion. *See* Opp'n at 7–8. The Court finds that even without IVCM's consent to extend the deadline, as contemplated by the statute, Mora's failure to approve the application did not, by itself, give rise to a protected interest on the facts alleged by IVCM.

Generally, a landowner has a protected property interest in permits and plats when the permitting agency has engaged in a final discretionary action granting the permit. *Koloa Marketplace, LLC v. Cnty. of Kauai*, No. CIV.06 00570 HG BMK, 2007 WL 2247797, at *13 (D. Haw. July 31, 2007) (citing *Weinberg v. Whatcom Cnty.*, 241 F.3d 746, 753 (9th Cir. 2001)). However, "[d]eemed approved" language in the permit process does not give rise to a protected property interest when the overall statutory scheme is discretionary. *Maui Vacation Rental Ass'n, Inc. v. Cnty. of Maui*, No. 07-00495 JMS/KSC, 2007 WL 4440962, at *10 (D. Haw. Dec. 19, 2007), *aff'd,* 303 F. App'x 416 (9th Cir. 2008).

When "deemed approved" language functions as a procedural deadline requirement on an otherwise discretionary act, it does not transform a unilateral expectation into a

constitutionally protected interest. *See Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980) (holding that the defendant's failure to issue a written decision in accordance with procedural requirements did not give rise to a protected interest); *Koloa Marketplace, LLC*, 2007 WL 2247797, at *13 (collecting cases from other circuits holding specific "deemed approved" language did not give rise to a protected interest). It may be that an applicant is entitled to a permit under state law upon the expiration of the statutory deadline. *See, e.g., RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 919 (2d Cir. 1989). But the reviewing authority's discretion defeats a constitutional claim to a protected property interest, "regardless of how unlawful under state law the ultimate denial may have been." *Id.*

The Zoning Code section governing Planning Director authority reads, in its entirety:

> The Director shall have the authority to approve, deny or modify applications for Site Plan Review.
>
> Within fifteen (15) days of the date that application is deemed complete by the Director, the Director shall approve, conditionally approve, or disapprove the application, or shall request the applicant to revise said applications. Failure of the Director to act within fifteen (15) days shall be deemed approval of the application unless the applicant shall consent to an extension of time.

Zoning Code § 24.19.540. This is "deemed approved" language very similar to that discussed in *Koloa Marketplace*, 2007 WL 2247797, at *13. And as discussed *supra*, the approval scheme is discretionary. The Court finds that Director Mora's failure to act on the plans within fifteen days, as alleged in the Complaint, did not give rise to a protected property interest. Therefore, IVCM failed to state a claim for violation of procedural due process.

/ / /

/ / /

/ / /

/ / /

### *D. Vested Rights are Inapplicable*

IVCM's reference to "vested rights" is not applicable to the facts asserted in the Complaint.[1] *See* Compl. ¶ 42; Opp'n at 22. Under California law, "if a property owner has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit." *Avco Cmty. Devs., Inc. v. S. Coast Reg'l Com.*, 553 P.2d 546, 550 (Cal. 1976). Good faith reliance after permit approval is required. *Lakeview Dev. Corp. v. City of S. Lake Tahoe*, 915 F.2d 1290, 1295 (9th Cir. 1990) ("A claim brought under the federal Constitution charging the taking or deprivation of property thus cannot be premised solely on the charge that the government has repealed a law and revoked a once valid permit.").

Here, IVCM does not allege it relied on the purported automatic approvals. *See* Compl. ¶ 41–43. Instead, when City Manager Morita informed IVCM that a public process was necessary, IVCM decided to proceed with the project on County land instead. Therefore, IVCM cannot claim a violation of procedural due process based on vested rights.

### *E. Conclusion*

In sum, IVCM has failed to allege it was deprived of due process because adequate review procedures were available and IVCM did not allege a protected property interest through either mandated approval or the statutory deadline. The Court need not reach the questions of deprivation or constitutionally adequate due process. Because the pleading might be cured by the allegation of other consistent facts, the Court **DISMISSES** IVCM's procedural due process claim **WITH LEAVE TO AMEND.**

---

[1] IVCM's reliance on *Horn v. Cnty. of Ventura* is misplaced. There, the Supreme Court of California ruled that notice and a hearing were necessary prior to the approval of a subdivision plan because neighboring landowners had protected interests that could be harmed by the approval. 596 P.2d 1134, 1139 (Cal. 1979). The case does not concern a landowner's reliance on an approved permit or protected interest in the same.

## III. Equal Protection

Defendants argue that IVCM failed to state a claim for class-of-one equal protection because it has not identified sufficiently similar comparators. Memo at 15–16. And even if the other properties were sufficiently similar, Director Mora informed IVCM of his rational concerns that supported desperate treatment. *Id.* IVCM counters that the numerous other industrial operations in the industrial zone are similarly situated and Defendants had no rational basis for requiring IVCM to submit to discretionary process and environmental review.

The Court finds that IVCM has failed to allege a class-of-one equal protection claim. It does not identify sufficiently similar comparators, and any desperate treatment is supported by rational basis on the facts as alleged in the Complaint.

### *A. Legal Standard*

The Equal Protection Clause guarantees, "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. IVCM's claim is a "class of one claim," which alleges that the Defendants intentionally treated it differently from other similarly situated permit applicants. *See Gerhart*, 637 F.3d at 1021–22.

To succeed, a plaintiff must demonstrate that the defendants (1) intentionally (2) treated the plaintiff differently than other similarly situated property owners, (3) without a rational basis. *Id.* (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) and *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008)); *Thornton*, 425 F.3d at 1167. Although the plaintiff must show the decision was intentional, it "need not show that [Defendants] were motivated by subjective ill will." *Id.* (quoting *Willowbrook*, 528 U.S. at 565).

To make a claim, the plaintiff must plead facts "plausibly showing that similarly situated comparators exist." *Prime Healthcare Servs., Inc. v. Harris*, No. 16-CV-00778-GPC-AGS, 2017 WL 3525169, at *13–14 (S.D. Cal. Aug. 16, 2017) (dismissing class-of-one equal protection claim when the plaintiff provided twelve potential comparator

transactions but none were sufficiently similar based on a holistic evaluation). The Ninth Circuit has not offered substantial guidance on what types of facts are needed to satisfy the "similarly situated" requirement. However, "several district courts within the Ninth Circuit have followed the Second Circuit in concluding that class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Bd. of Trs. of Leland Stanford Junior Univ. v. Cnty. of Santa Clara*, No. 18-CV-07650-BLF, 2019 WL 5087593, at *7 (N.D. Cal. Oct. 10, 2019) (quoting *Warkentine v. Soria*, 152 F. Supp. 3d 1269, 1294 (E.D. Cal. 2016) and *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). A plaintiff does not need to prove each comparator is identical in every respect, but it must prove that they are similar in all material aspects. *See Brown v. Chaffee Cnty.*, No. 19-CV-01301-CMA-STV, 2019 WL 8723210, at *9 (D. Colo. Dec. 19, 2019), *report and recommendation adopted,* No. 19-CV-01301-CMA-STV, 2020 WL 995607 (D. Colo. Mar. 2, 2020) (dismissing an equal protection claim when plaintiff's foxhunting club was not sufficiently similar to other outfitting facilities).

In *Thornton*, the city imposed certification requirements on all wrecking yards. 425 F.3d at 1167. The plaintiff, who owned the only wrecking yard in the city, claimed differential treatment based on other wrecking yards in the state and other businesses in the heavy industrial zone, who were not subject to the certification requirements. *Id.* The Ninth Circuit affirmed summary judgment for the defendants because "[t]here are no other auto wreckers in St. Helens and, therefore, the City is not imposing a burden on the Thorntons that it does not also impose on other wreckers within its jurisdiction." 425 F.3d at 1167. The Ninth Circuit further held that "other businesses [] not required to renew their respective certificates annually and [] not directed to obtain the City's approval in the process" are not similarly situated to the plaintiff. *Id.*

Finally, the Court must determine if there is a rational basis for singling out the plaintiff, not if there is a rational basis for the underlying government action. *Id.* at 1023 (citing *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 680 (9th Cir. 2002)).

***B. Analysis***

Here, IVCM has plausibly alleged intentional conduct only by Defendants Morita, and Mora. Specifically, IVCM alleges Defendants required a discretionary conditional use permit, text amendments, and environmental reviews for the data center project. Compl. ¶¶ 58, 201. There is a sufficient nexus to the meeting held on July 2 to allege intentional conduct by these Defendants. But IVCM does not plausibly allege intentional conduct by Defendant Councilmember Burnworth related to its equal protection claim. *See generally id.*

However, IVCM has not plausibly alleged different treatment from others similarly situated. IVCM claims it is like other property owners and developers in the Rail-Served Industrial Zone. *Id.* ¶ 200; Opp'n at 18. Specifically, Defendants ministerially approved a 289,000 square foot warehouse and another distribution center. *Id.* Also incorporated in the Complaint is IVCM's list of other approved properties submitted to the City on June 23, 2025. Compl., Ex. 15 at 6, ECF No. 1-16. Therein, IVCM lists ten specific properties in the City including beverage distributors, petroleum equipment sellers, fertilizer manufacturers, and food banks. *Id.* IVCM argues that its own contemplated use—"technology-based infrastructure supporting research, professional, and business operations"—is similar to the above comparators. IVCM's site plan was between 675,000, Compl. Ex. 6 at 5, and 785,000 square feet, Compl., Ex. 14 at 4, ECF No. 1-15.

The Court finds that IVCM's comparators are not sufficiently similar to give rise to a class-of-one equal protection claim. IVCM does not allege Defendants approved any other data centers or other "technology-based infrastructure." Further, IVCM's proposed development is over twice as large as the only site with a listed size. Finally, IVCM does not allege any comparator with similar power requirements, water use, or battery storage hazards. These factors are material because they are the reasons for review advanced by Director Mora in the email attached to the Complaint. Compl. Ex. 17 at 2, ECF No. 1-18. It is possible that sufficiently similar comparators exist in the City. But IVCM has not alleged them here.

IVCM does not reference the fourteen other data centers ministerially approved in California listed in its memorandum on June 6, 2025. *See generally* Compl., Ex. 11, ECF No. 1-12. However, the Court finds it prudent to address why these projects could not be comparators for an equal protection claim. The Court cannot group IVCM with other data centers in California because Defendants have no authority to regulate data centers located beyond its boundaries. *Thornton*, 425 F.3d at 1167.

Finally, IVCM does not plausibly allege there is no rational basis for requiring discretionary review and a zoning text amendment. Compl. ¶ 203. Indeed, Director Mora stated the reasons including energy use, cultural resources, tribal cultural resources, and hazards which were "particularly relevant" based on the "inclusion of battery storage and substation components." Compl. Ex. 17 at 2, ECF No. 1-18. The Court finds it rational that Defendants would decide to treat a 675,000 square foot data center differently than a 289,000 square foot warehouse.

***C. Conclusion***

In sum, although IVCM has alleged intentional conduct by Defendants, it has failed to allege sufficiently similar comparators and has failed to allege facts showing there is no rational basis for desperate treatment. Since IVCM may be able to plead additional facts in order to address both deficiencies, the Court **DISMISSES** IVCM's equal protection claim **WITH LEAVE TO AMEND**.

## FIRST AMENDMENT RETALIATION

IVCM alleges that, after it relocated the data center project to County of Imperial land, Defendants "launched a coordinated campaign to sabotage the data center" "[i]n direct retaliation for [IVCM's] exercise of its legal rights." Compl. ¶ 3. The Court finds that each allegation of retaliation fails at various points in the analysis.

### I. The City's Petition Against the County

As discussed above, IVCM withdrew its site plan application after hearing a discretionary process and environmental review would be necessary. *Id.* ¶ 79. At this point, IVCM planned to construct the data center on County land. *Id.* As IVCM continued

to express interest in purchasing reclaimed water, City Manager Morita asked for a copy of IVCM's will-serve letter from El Centro.[2] *Id.* ¶ 89.

Thereafter, a notice was posted to the City's Facebook page stating, *inter alia*, that the City of Imperial recently became aware that "the County of Imperial has approved, or is in the process of finalizing approval," for a data center and "the City Council feels it is critical to notify our residents of this project." *Id.* ¶ 90. Two weeks later, El Centro publicly stated that it had issued a will-serve letter but has not entered into any agreement regarding IVCM's data center project. *Id.* ¶ 92.

The City filed a Petition for Writ of Mandate seeking to set aside the grading permit ministerially issued by the County of Imperial. *Id.* ¶107; RJN Ex. 3, ECF No. 12-2 at 22; *City of Imperial v. Cnty. of Imperial*, No. ECU004457 (Cal. Super. Ct. filed Dec. 4, 2025). The City made several public statements on social media regarding the petition. Compl. ¶¶ 118 (posting the petition), 119 (posting a letter to the County Planning Commission), 121 (posting objections to IVCM's proposed lot merger).

## II. Legal Standard

"'[A]s a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). Restrictions on protected expression are distinct from restrictions on economic activity such as business dealings. *B & L Prods., Inc. v. Newsom*, 104 F.4th 108, 114 (9th Cir. 2024), *cert. denied sub nom. B&L Prods. v. Newsom*, 145 S. Ct. 1958 (2025) (citing first *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 567 (2011) then *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 685 (9th Cir. 2019)).

/ / /

[2] A will-serve letter is a standard, informational tool commonly requested by developers and financial institutions to assess whether water service could potentially be available for a project. *See* Stuart M. Saft, Commercial Real Estate Transactions § 6:86 (2026), Westlaw.

To state a First Amendment retaliation claim, a plaintiff must plausibly allege "that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)); *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019).

To prevail on the claim, the plaintiff must establish a "causal connection" between "the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves*, 587 U.S. at 398. "Specifically, a plaintiff must show that the defendant's retaliatory animus was a but-for cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Capp*, 940 F.3d at 1053 (quoting *Nieves*, 587 U.S. at 398).

## III. Analysis

IVCM alleges that Defendants retaliated against IVCM for engaging in protected activity. More specifically, IVCM alleges that it (1) insisted on compliance with the City's review process, (2) petitioned the County of Imperial for land use approvals, (3) spoke at service club meetings, and (4) threatened litigation against the Imperial Irrigation District ("IID") and Imperial. Compl. ¶ 191; *see also id.* ¶ 144.

According to IVCM, in retaliation, Defendants, as a group, (1) deviated from the site plan review procedure; (2) demanded environmental review and zoning amendments for IVCM's project in the City; (3) distributed City-authored flyers and posted hostile notices; (4) solicited confidential documents to sabotage IVCM's agreement with El Centro; and (5) filed a sham petition against the County of Imperial regarding their ministerial approval of IVCM's project.

The Court applies each *O'Brien* element in turn for each alleged retaliatory act.

/ / /

/ / /

### *A. Constitutionally Protected Activity*

The first *O'Brien* element is satisfied here. It is true that generally IVCM's attempts to have its data center projects approved and negotiations to purchase reclaimed water are business dealings that are not protected under a retaliation claim. But the first and third forms of activity alleged by IVCM are essentially "voicing criticism of the [government's] conduct." *Capp*, 940 F.3d at 1054. This is at the core of protected speech. *See Hartman*, 547 U.S. at 256; *Ford v. City of Yakima*, 706 F.3d 1188, 1192–93 (9th Cir. 2013), *abrogated by Nieves*, 587 U.S. 391. And IVCM's second and fourth forms of activity relate to petitioning the government. Although claims under the Petition Clause are distinct, "the right to speak and the right to petition are cognate rights." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011) (quoting *Thomas v. Collins*, 323 U.S. 516, 530 (1945)). Here, IVCM has alleged retaliation based on speech contained within its grievances and threatened lawsuit. *See Guarnieri*, 564 U.S. at 387. Therefore, the applicable law is First Amendment retaliation. *See Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 173 (D.D.C. 2025).

### *B. Chilling Effect*

To make a retaliation claim, IVCM must allege that a defendant committed a specific act that has an objectively chilling effect. The test is whether a person "of ordinary firmness" in the plaintiff's position would be deterred from continuing to engage in protected activity. *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

To survive a motion to dismiss, a plaintiff must do more than "plead facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)). And a retaliation claim cannot be plead against an individual with "insufficient connection to the critical events to be held responsible for actions taken against [the plaintiff]." *O'Brien*, 818 F.3d 920. The well-pleaded facts must permit the court to infer more than the "mere possibility of misconduct" by the named defendant. *See Iqbal*, 556 U.S. at 679.

Vicarious liability does not apply to § 1983 lawsuits. *Id.* at 676. However, for First Amendment retaliation claims against supervisors, it is sufficient to allege supervisory knowledge and acquiescence to the retaliation; the supervisor need not have retaliatory motive themselves. *OSU Student All. v. Ray*, 699 F.3d 1053, 1071 (9th Cir. 2012) (holding complaint plead supervisor liability when exhibits showed knowledge and acquiesce to the misconduct by a subordinate).

At various points in the Complaint, IVCM alleges four categories of conduct by Defendants that "would chill a person of ordinary firmness from continuing to engage in the protected activity": the site plan review process, interference with the El Centro water service agreement, public disparagement, and filing an alleged sham lawsuit. Compl. ¶ 195.

*1. Site Plan Review Process*

IVCM's argument seems to be that Defendants signaled their intention to apply a discretionary process that would require environmental review. Compl. ¶ 61. Then, IVCM insisted that the law required ministerial review. Compl. ¶ 62. In response, Defendants retaliated by continuing to apply the discretionary review. Compl. ¶ 79. This is not action with a chilling effect. It is a legal dispute where IVCM disagrees with the outcome.

Although IVCM plausibly alleges that City Manager Morita and Planning Director Mora were responsible for decisions and acts during the site plan review process, it does not allege any acts that would have a chilling effect. *See* Compl. ¶¶ 2, 58, 61, 79, 192. Retaliation cannot predate protected speech. This alleged retaliation ended on October 16, 2025, when IVCM withdrew its site plan application on City land. Compl. ¶ 79. Therefore, the only possible retaliatory motive alleged by IVCM is based on IVCM's insistence that the City apply the ministerial process. *Id.* ¶ 191. The other forms of protected speech happened later. *See* Compl. ¶ 74.

Additionally, IVCM does not allege that Councilmember Burnworth knew or acquiesced to any part of the site plan review process, beyond bare conclusory statements of legal liability. *See* Compl. ¶ 11, 187, 124. Therefore, the Court finds IVCM does not

allege any chilling action by any Defendant during the site review process that can serve as the basis for a retaliation claim.

*2. El Centro Water Agreement*

Next, IVCM alleges that Defendants used the El Centro "will serve letter" to interfere with the water agreement. But bare conclusory statements are insufficient to allege misconduct. The Court agrees with IVCM that, in the hypothetical, interference with a water supply contract is conduct that would have a significant chilling effect on developers in IVCM's position. But IVCM does not plead conduct that amounts to the claimed interference.

IVCM does not plausibly allege that City Manager Morita took any actions amounting to interference with the El Centro water service agreement. Compl. ¶ 89, 91. The only action alleged is a "hostile notice" about the El Centro agreement posted to the City's Facebook page. Compl ¶ 117. According to the Complaint, Morita asked for El Centro's will-serve letter and stated he intended to contact El Centro directly. Compl. ¶ 96. But IVCM does not connect this "solicit[ation of] confidential documents" (i.e., the will-serve letter) to any attempt to "sabotage [IVCM's] water agreement." Compl. ¶ 192. IVCM does not explain how the alleged solicitation related to interference when the "hostile notice" was posted an hour before IVCM provided the "will serve letter." *Compare* Comp. ¶ 90 *with id.* ¶ 91. IVCM does not allege any other acts by Defendants related to the El Centro "will serve letter." Therefore, the Court finds that IVCM does not allege any chilling action regarding the El Centro water service agreement.

*3. The City's Petition Against the County of Imperial*

IVCM alleges that Councilmember Burnworth and City Manager Morita were involved with a sham petition against IVCM. IVCM does not allege involvement by Director Mora. The City filed a petition for writ of mandate seeking to "invalidate the ministerial grading permit issued by the County of Imperial. Compl. ¶¶ 107; *City of Imperial v. Cnty. of Imperial*, No. ECU004457 (Cal. Super. Ct. filed Dec. 4, 2025). IVCM further alleges that Councilmember Burnworth coordinated with the Comite Civico del

Valle, a California non-profit, to engage in "a parallel track of obstruction," Compl. ¶ 165, that appears to be focused on the City's petition, *id.* ¶¶ 107, 170. IVCM also alleges that City Manager Morita submitted a sworn declaration attached to the petition. Compl. ¶ 108.

Litigation can be the basis for a retaliation claim. *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1298 (11th Cir. 2019) (collecting circuit decisions involving First Amendment retaliation claims "predicated on a retaliatory lawsuit or counterclaim"); *Amacher v. City of Tullahoma, Tenn.*, 179 F.4th 999, 1002 (6th Cir. 2026). A lawsuit can have an objectively chilling effect. *See DeMartini*, 942 F.3d at 1311 (J. Rosenbaum, dissenting ("[C]ivil litigation is costly and stressful. It can also result in delays to the matters being litigated. So like a criminal prosecution, litigation can also be a highly effective way to punish and chill protected First Amendment activity.").

Thus, the Court finds IVCM adequately alleges that Councilmember Burnworth and City Manager Morita were responsible for or involved with the filing of the petition at issue that could have a chilling effect.

*4. Public Disparagement*

Finally, IVCM alleges broad "public disparagement." Compl. ¶ 195. From various points in the Complaint, this includes flyers and unattributed hostile notices on social media. However, IVCM does not allege that any Defendant, or indeed any city employee, distributed any flyers besides two conclusory statements. *See* Compl. ¶¶ 3, 192. Therefore, flyer allegations cannot be a basis for retaliation as pleaded.

The Ninth Circuit has set a high bar for when government speech gives rise to a First Amendment retaliation claim. *Mulligan v. Nichols*, 835 F.3d 983, 989 (9th Cir. 2016). "Restricting the ability of government decisionmakers to engage in speech risks interfering with their ability to effectively perform their duties" and "ignore the competing First Amendment rights of the official themselves." *Id.* For example, even defamatory statements are not sufficient without "state action affecting [a plaintiff's] rights, benefits, relationship or status with the state." *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994); *see also Stabbin Wagon v. City of Medford*, No. 2026 WL 2942215,

at *9–10 (D. Or. Sep. 30, 2026) (finding plaintiff's allegations that Defendants "expressed outrage over the award and attempted to mobilize public opposition" was insufficient to give rise to a retaliation claim).

Here, IVCM's allegations fail because they seek to hold Defendants accountable for protected speech. Even assuming the public statements were materially false, as alleged by IVCM, Defendants are not the state actors responsible for the permit process in the County of Imperial. The government is allowed to express its own views, even when those views are critical of individuals or companies. *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998). Therefore, the public statements alleged by IVCM are not adverse actions that would have a chilling effect.

Also of note, IVCM dedicates thirty-five paragraphs in the Complaint to describing the many bad acts by the Imperial Irrigation District ("IID"). However, IID is not a defendant in this lawsuit. IVCM claims that each Defendant coordinated with IID regarding an alleged misinformation campaign. To support this, IVCM pleads two facts. An IID Board representative, who was the City's Mayor in 2021, made public statements adverse to IVCM. Compl. ¶¶ 149, 152, 157. And the City held a public data center workshop two days after IID held a similar workshop.[3] Compl ¶¶ 154, 156. The Court finds this is not sufficient to allege conduct by Defendants, despite IVCM's general allegations of "specific attacks." Compl ¶ 156. None of IID's alleged acts are adequately alleged to be the responsibility of any named Defendant.

In sum, IVCM only adequately alleges that Councilmember Burnworth and City Manager Morita were involved in the sham petition against the County of Imperial. The Court finds this would chill a person of ordinary firmness in IVCM's position. However, IVCM must also plausibly allege retaliatory motive.

/ / /

---

[3] IVCM does not allege any facts about the nature or content of the workshops except that they made "specific attacks on the data center." Compl. ¶ 156.

### *C. Substantial or Motivating Factor*

Having met the first two requirements, IVCM must plead that its protected speech was a substantial or motivating factor for Defendants alleged conduct. It is not sufficient for Defendants to argue that their conduct was lawful. Otherwise lawful action may be "unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment." *O'Brien*, 818 F.3d at 932. Conversely, intent to retaliate must have caused the adverse act, not some other improper motive. *Hartman*, 547 U.S. at 260 ("At least with certain types of claims, proof of an improper motive is not sufficient to establish a constitutional violation—there must also be evidence of causation.") (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

A bare allegation of malicious intent is not plausible where there is an "obvious alternative explanation" for alleged misconduct. *Capp*, 940 F.3d at 1055 (quoting *Iqbal*, 556 U.S. at 682). But direct evidence of retaliatory intent is rare. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). So, allegation of a "chronology of events" that suggests retaliation "is sufficient to survive dismissal." *Id.* Further, the "mere existence of a legitimate motive" is insufficient to mandate dismissal. *Capp*, 940 F.3d at 1056.

As discussed, *supra*, the City filed a petition against the County of Imperial "seeking to invalidate the ministerial grading permit issued by the County." Compl. ¶ 107. Since this would have a chilling effect, the issue is whether IVCM plausibly alleges this petition was substantially motivated by retaliation against IVCM's protected activity.

The Court must consider whether the City had probable cause to file the petition at issue to decide whether IVCM has shown the requisite causation between retaliation and the injury. *See DeMartini*, 942 F.3d at 1298 (the Eleventh Circuit collecting cases on retaliation claims predicated on a retaliatory civil lawsuit or counterclaim). Although there is no binding precedent in this Circuit, based on analogous precedent and common law, "the presence of probable cause will generally defeat a plaintiff's § 1983 First Amendment retaliation claim predicated on an underlying civil lawsuit . . . ." *Id.* at 1306 (relying on Supreme Court precedent on retaliation claims arising in criminal prosecution and arrest);

*see also Pro. Real Est. Inv'rs v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 63 (1993) (holding in the context of antitrust law, that wrongful civil proceedings claims require proving the absence of probable cause).

Probable cause to "institute civil proceedings requires no more than a 'reasonable belief that there is a chance that a claim may be held valid upon adjudication.'" *Pro. Real Est. Invs., Inc.*, 508 U.S. at 62–63 (quoting *Hubbard v. Beatty & Hyde, Inc.*, 343 Mass. 258, 262 (1961)). But even if probable cause is present, a plaintiff can prove retaliation if they allege differential treatment. *Capp*, 940 F.3d at 1056–57. Differential treatment would suggest that the underlying probable cause was not the substantial motivation for the civil action.

IVCM alleges the motivation must have been retaliatory because the petition was frivolous and City Manager Morita lied to support the petition. Compl. ¶¶ 107–09; *see also id.* ¶ 121. Perhaps. But the Complaint itself supplies an alternative motive. IVCM claimed the shared objective of Councilmember Burnworth and the Comite Civico del Valle ("CCV") was to create "leverage necessary for CCV to demand a settlement." Compl ¶ 165. Although improper, this motive is not retaliation. Instead, the facts as alleged by IVCM suggest that even absent IVCM's protected speech, Defendants would have filed the petition against the County of Imperial—if only to secure a settlement.

But even so, Defendants had probable cause to file the petition. On September 11, 2026, the Superior Court granted the amended petition. *City of Imperial v. Cnty. of Imperial*, No. ECU004457, Peremptory Writ of Mandate (Cal Super. Ct. Sep. 30, 2026). In doing so, the court found the permit was not ministerial. *See City of Imperial v. Cnty. of Imperial*, No. ECU004457, Tentative Order, at 13 (Cal. Super Ct. Aug. 31, 2026). Although these proceedings were not attached to the Complaint, the Court takes judicial notice of the public orders. *See Dawson*, 451 F.3d at 551.

The Court need not agree on the merits with the Superior Court to resolve this issue. Since the court ruled for the City, the Court finds that probable cause for filing the petition existed. Therefore, IVCM has failed to allege a retaliatory motive.

## IV. IVCM's Claims Predicated on the Petition are Barred Under the *Noerr-Pennington* Doctrine

Even if IVCM alleged a retaliation claim based on the City's petition, it would be barred under the *Noerr-Pennington* doctrine. The First Amendment to the U.S. Constitution guarantees the right "to petition the Government for a redress of grievances." U.S. Const. amend. I, cl. 6. To make the Petition Clause meaningful, the Supreme Court, through the *Noerr-Pennington* doctrine, ensures persons are immune from antitrust or other statutory or tort liability "for engaging in conduct (including litigation) aimed at influencing decisionmaking by the government." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014) (describing immunity from antitrust liability); *see also Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) (applying doctrine to state law claims alleging tortious interference with prospective economic advantage).

To determine if a defendant's conduct is immunized, courts apply a three step analysis "to determine: (1) 'whether the lawsuit imposes a burden on petitioning rights,' (2) 'whether the alleged activities constitute protected petitioning activity,' and (3) 'whether the statute[] at issue may be construed to [avoid] that burden.'" *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 535 (9th Cir. 2022) (quoting *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009)).

Under the second prong, "a lawsuit is unprotected only if it is a 'sham'—i.e., 'objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.'" *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) (quoting *Pro. Real Est. Invs., Inc.,* 508 U.S. at 60). If the court determines the lawsuit is not baseless, it need not reach the second issue of intent. *Id.*; *see also Campbell v. Pa. Sch. Bds. Ass'n*, 972 F.3d 213, 219 (3d Cir. 2020) ("Thus, if probable cause exists, our inquiry is at an end.").

The Ninth Circuit has held that § 1983 does not subject governmental entities or officials to liability for activity that would otherwise be under the protection of the *Noerr-*

*Pennington* doctrine. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 932 n.6 (9th Cir. 2006) (quoting *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1093 (9th Cir. 2000)).

Defendants do not argue that the present lawsuit would impermissibly burden the City's petitioning rights. *See also Kearney*, 590 F.3d at 645; *BE & K Const. Co. v. NLRB*, 536 U.S. 516, 530 (2002) (holding that declaring an employer's lawsuit illegal burdens petitioning rights even when the lawsuit itself was retaliatory). The issue is whether the petition was protected or "sham litigation."

As discussed above, the City had probable cause to file the petition, as illustrated by the favorable order by the Superior Court. Since § 1983 cannot burden protected petitioning rights, the *Noerr-Pennington* doctrine bars IVCM's action challenging Defendants' petition.

**V. Conclusion**

IVCM has failed to state a claim for First Amendment retaliation. It has not alleged chilling effect related to the site plan review, El Centro water agreement, or public statements. And it does not allege the petition filed by the City was motivated by retaliation. It is possible that an amendment may remedy the deficiencies. Accordingly, the Court **DISMISSES** IVCM's retaliation claim **WITH LEAVE TO AMEND**.

## ***MONELL*** **LIABILITY**

To hold a municipality liable under *Monell*, the plaintiff must prove that constitutional violations were caused by a municipal policy or practice. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978); *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1257 (9th Cir. 2024). There are four elements: "(1) [the plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to his constitutional right; and (4) 'the policy is the moving force behind the constitutional violation.'" *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (quoting *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)). There can be no *Monell* claim when the plaintiff fails to prove a constitutional injury. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

As discussed above, the Court finds that IVCM has failed to make a constitutional violation claim.[4] Therefore, the Court need not reach the other elements of IVCM's *Monell* claim. If IVCM amends with facts sufficient to allege a constitutional violation, it is also possible to allege a viable *Monell* claim. Accordingly, the Court **DISMISSES WITH LEAVE TO AMEND** IVCM's *Monell* claim.

**CONCLUSION**

In light of the foregoing, the Court **GRANTS** Defendants Request for Judicial Notice (ECF No. 12-2), **GRANTS** Defendants' Motion to Dismiss (ECF No. 12) and **DISMISSES** all of IVCM's claims **WITH LEAVE TO AMEND**.

IVCM **MAY FILE** an amended complaint within thirty (30) days of the electronic docketing of this Order. Should IVCM elect to file an amended complaint, it must cure the deficiencies noted herein and such amended complaint must be complete without reference to the superseded complaint. *See* S.D. Cal. CivLR 15.1. Any claims not realleged in the amended complaint will be considered waived. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925, 928 (9th Cir. 2012).

**IT IS SO ORDERED.**

Dated: November 2, 2026

Hon. Janis L. Sammartino
United States District Judge

[4] Since the Court finds no constitutional violation, it does not reach the question of qualified immunity.